VERNON BRELAND, APPELLANT, v. CECO STEEL PRODUCTS CORP., APPELLEE.

113 N. W. 2d 528

Filed February 16, 1962. No. 35105.

*Ross & O'Connor*, for appellant.

*Joseph P. Cashen* and *Kennedy, Holland, DeLacy & Svoboda*, for appellee.

Heard before CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

BROWER, J.

This is an action brought under the Nebraska Workmen's Compensation Law by Vernon Breland, appellant and plaintiff, against Ceco Steel Products Corporation, appellee and defendant.

A hearing was had before a judge of the compensation court on December 2, 1960, and on December 27, 1960, the judge found that the plaintiff was temporarily totally disabled from the date of the accident until May 8, 1960, and was entitled to compensation thereafter for an additional 296 4/7 weeks at $6.80 per week on account of 7½ percent permanent partial disability and loss of earning power to the body as a whole, and also allowed certain medical expenses.

From the award of the single judge defendant appealed to the workmen's compensation court which heard the same, sitting en banc, and on March 2, 1961, entered an award which denied compensation for the permanent partial disability to the body as a whole.

The allowance for total temporary disability has been paid. The medical and hospital expenses have been allowed and adjudged by the court below and no question is raised concerning them.

Plaintiff appealed to the district court for Douglas County which court dismissed the appeal and as a result sustained the award of the compensation court, finding no permanent partial disability. After a motion for new trial filed by the plaintiff was overruled, he appealed to this court.

The only error alleged is that the court erred in failing to find that plaintiff sustained injuries of a permanent partial nature to the body as a whole.

This being a matter which is tried de novo in this court, it becomes necessary for us to review the evidence.

On April 14, 1960, the plaintiff while employed by defendant as a carpenter at the Brandeis Building in Omaha was engaged in tying pans on the ceiling of a building. His work on this job required him to stand

on a scaffold and work by reaching above his head. He was wearing an aluminum safety hat. The scaffold broke and he fell 9 feet or more causing the injuries, the extent of which is the question in controversy. He remembers his head struck something and then he blacked out. He was taken to Immanuel Hospital where he remained 4 days and was treated by Dr. Vetter who applied heat to his right side. After he left the hospital this treatment was continued by the doctor throughout May 1960. However, he was able to return to work on May 9, 1960, being still employed by defendant. While away from work he received compensation for temporary total disability. After his return to work he received a slight raise in pay and then received $3.55 an hour. On return he states he asked for and received lighter work but it appears the work he had been doing had terminated. His new assignment consisted of building shoring. This required handling and clamping together 4 x 4 timbers from 7 to 9 feet long, weighing about 36 pounds each, classed by the field superintendent as heavy work which he says was the only work the defendant had. This available work ended in June of 1960, and shortly thereafter he entered the employment of W. Boyd Jones who was repairing a partially burned-down feed mill for Swift Packing Company, where he assisted in tearing down and rebuilding a roof and moving equipment. He continued this work at the same hourly wage until November 25, 1960.

On October 14, 1960, he consulted with Dr. Harold A. Ladwig, a neurologist at Omaha. This was the first medical treatment since his visit to Dr. Vetter in May of 1960.

Dr. Ladwig who testified for plaintiff stated he made an examination of and took a history from the plaintiff concerning his accident and condition. In the history, as related by the doctor, plaintiff said that in the fall he struck a concrete wall with his right side and that his head struck something in falling. He spoke of pain

in his back which had continued to grow worse. It was relieved somewhat on movement. He complained also of headaches consisting of dull, throbbing pain in the left frontal region occasionally becoming sharp. The pain bothered him on working with his hands above his head or at his feet. He also complained of numbness in his left hand.

The doctor's examination showed the cranial nerves as normal except a decreased hearing in the left ear. His muscle strength was normal. The cervical vertebra showed normal alignment. The thoracic vertebra disclosed a mild kyphosis or backward curvature and there was some degenerative spurring in the cervical vertebra, neither of which he associated with the accident.

There was however tenderness in the middle of the back to the right midline and a tenderness of the upper cervical area where, if he applied pressure, headache was produced. The doctor also found an area of hypesthesia or decreased feeling in the little and ring fingers of the left hand, which the doctor stated involved the distribution of the ulnar nerve in the left arm. The doctor thought plaintiff had received a muscular sprain which he associated with the headache and tenderness in the upper cervical region, and that this and the disturbance of sensation in the left ulnar nerve resulting in the numbness in the left hand were of post-traumatic nature, and thus he attributed it to the accident in view of the fact the numbness, according to the history, had not existed before. He stated the basis for the partial permanent disability was primarily on the hypesthesia or numbness in the hand. He estimated this disability at 5 or 10 percent of the body as a whole.

The doctor testified that he could not state at what point the ulnar nerve had been injured and that many times injuries to the ulnar nerve exist where no cause could be found. He stated the trauma in many cases might have been caused several years before the doctor

saw the patient. In this case it might have been produced by trauma occurring months before the accident. He stated also that the only basis for his conclusions was the history related by the patient who reported no injury to the left arm in the fall.

The last time the doctor saw plaintiff was on February 14, 1961, at which time the tenderness in the neck and back regions was present but not in so great a degree, but the hand was much the same.

Dr. Alister I. Finlayson, a neurological surgeon on the staff of several hospitals in Omaha, examined the plaintiff on behalf of the defendant on February 13, 1961. He also reviewed the report of Dr. Ladwig and received a history from plaintiff which related the pain in the neck and headaches, and the numbness or "sleep" sensation in the left hand. There was no pain associated with the numbness and no complaint with regard to strength or handgrip. He examined the cranial nerves going to the neck; checked the function of the spinal cord and nerves going to the extremities and trunk; and also checked by means of examination of his motor strength, reflex activity and sensory disturbances or their lack, and coordination tests. In the examination there were no positive findings except the disturbance in the ulnar nerve resulting in the numbness of the hand which he said extended up the arm to a slight degree only. He found spurring in the cervical vertebra but considered it unrelated to the accident. Plaintiff's history did not disclose any injury to the arm except an abrasion to the thumb which was not related to the numbness. He indicated he could not determine with any degree of certainty the cause of the numbness in the hand.

Nolan Bracey, the defendant's field superintendent, testified that he was well acquainted with the plaintiff and that their families get together about once a week. He was not present at the accident. The ceiling on which plaintiff was working was approximately 16 feet high and that a contemplated fill on the floor might not

have been finished, and that, therefore, it might have been higher. He further testified that the work the plaintiff did upon returning to work after the accident was classed as heavy work. The plaintiff was given the work and did it, and while continuing to work complained of no difficulty.

This is the substance of the evidence before the trial court. This being a workmen's compensation case, it is to be considered and determined de novo upon the record by this court. Gotfrey v. Sakurada, 169 Neb. 879, 101 N. W. 2d 470. In such a case this court has held, in Cole v. Cushman Motor Works, 159 Neb. 97, 65 N. W. 2d 330, that: " 'In considering the sufficiency of the proof it should be remembered the rule of liberal construction, as it relates to the workmen's compensation law, applies to the law and not to the evidence offered to support a claim by virtue of the law. The rule does not dispense with the necessity that claimant prove his right to compensation; that is, it does not permit a court to award compensation when the required proof is lacking.' "

In the case before us it is not questioned that there was an accident and that the plaintiff was injured and received compensation of a temporary nature. He seeks however compensation for permanent partial disability. In such a case the claimed disability must be shown to have resulted from the accident. In Pixa v. Grainger Bros. Co., 143 Neb. 922, 12 N. W. 2d 74, this court said, concerning a death claim under workmen's compensation, that: "Any possible connection between the slight accident to his back, from which his attending physician says he had recovered, and his death would be a mere guess, surmise, conjecture, speculation, or possibility.

"This is not sufficient, for under our law it is required that the plaintiff prove by a preponderance of the evidence, before compensation can be awarded, that personal injury to an employee must have been caused by

an accident arising out of and in the course of his employment.

"Such facts must be proved by the plaintiff by sufficient legal evidence leading to the direct conclusion, or a legal inference therefrom, that such an accidental injury occurred and caused the disability."

Though Dr. Ladwig and Dr. Finlayson agreed in many respects as to the plaintiff's condition, they did not agree as to whether the permanent partial disability was attributable to the accident. Dr. Ladwig felt that, "from the history of its development, following the injury, one would relate it as being post-traumatic in origin." He admitted that this was based wholly on the history given to him by the plaintiff. Dr. Finlayson, after his examination and review, felt that he could not state what had brought about the condition in the left hand and could not find any other condition of permanence.

It is to be noted that plaintiff had been treated by Dr. Vetter immediately following the accident for injury to his right side, and not his left side. The plaintiff related falling upon his right side to the doctors. The field superintendent testified that the plaintiff did ordinary heavy work without complaint. Therefore, it appears that there is a conflict of evidence as to when the disability arose and what might have caused it, and as to whether or not it can with any reasonable certainty be attributed to the accident.

In such a case, "Where the evidence is conflicting and cannot be reconciled, this court, upon a trial de novo in a workmen's compensation case, will consider the fact that the trial court observed the demeanor of witnesses and gave credence to the testimony of some rather than to the contradictory testimony of others." Cole v. Cushman Motor Works, *supra*.

In the case of Frederick v. Cargill, Inc., 165 Neb. 589, 86 N. W. 2d 575, this court said: "If, after injury, an employee receives the same or higher wage than before

injury, it is indicative, although not conclusive, of the fact that his earning power has not been impaired." It is to be noted that in the work plaintiff did for the defendant and W. Boyd Jones after his injury he received slightly more wages than before the accident.

Reviewing the record in this case, we are of the opinion that the plaintiff has not sustained the burden of proof which is required by him to show, with reasonable certainty, that the permanent disability of which he suffers was caused by the accident which he sustained while in the employ of defendant.

To award him compensation for the disability claimed would be, as stated in Pixa v. Grainger Bros. Co., *supra,* a mere guess, surmise, conjecture, speculation, or possibility. This conclusion agrees with that of the court which tried the case, heard the testimony, and observed the witnesses.

The plaintiff having received total temporary disability payments while away from work and the judgment of the trial court having awarded the medical and hospital expense, the judgment should be and is affirmed.

AFFIRMED.

SIMMONS, C. J., participating on briefs.