DAVID R. COLGROVE, APPELLANT, v. CITY OF WYMORE, A CORPORATION, ET AL., APPELLEES.

171 N. W. 2d 639

Filed October 24, 1969. No. 37242.

Cobb, Swartz & Wieland, for appellant.

Cline, Williams, Wright, Johnson, Oldfather & Thompson, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

WHITE, C. J.

This is an action to recover benefits under the Nebraska Workmen's Compensation Law.

David R. Colgrove, plaintiff and appellant, was employed by the City of Wymore as an apprentice lineman. On May 6, 1966, he was injured as the result of a fall due to the mechanical failure of a boom basket in which he had been working. Although other injuries were sustained and compensation paid, the sole issue before this court is whether the plaintiff suffered a permanent partial disability, from the surgical removal of one kidney, within the meaning of section 48-121 (2), R. R. S. 1943, and is now entitled to compensation therefor.

The Nebraska Workmen's Compensation Court disallowed compensation for permanent disability. The district court for Lancaster County dismissed plaintiff's appeal. Plaintiff has appealed to this court. We affirm the judgment.

Medical testimony established that, upon the loss of one kidney, the other kidney makes an effort to achieve the total weight, size, and function of the original two kidneys. Creatinine is one of the breakdown products

that is excreted in urine and is used to determine kidney function. A person with two normal kidneys has a creatinine clearance of 130,000,000 grams per minute while a person with a single kidney will normally have a clearance of 70,000,000 to 90,000,000 grams per minute.

It was testified that this has little medical significance on the bodily function on a day-to-day living basis as one kidney is sufficient to maintain the internal environment of the body. The significance of the kidney loss is that all reserve is gone. Thus, if plaintiff were to have any future kidney ailments, his life could be endangered.

One of the medical experts also testified that, in his opinion, there was a 10 percent loss of total bodily function to a person with only one kidney. This 10 percent loss was then linked to the fact that a person with only one kidney might be more susceptible to, or have a more difficult time with, kidney ailments in the future. It was not related to the plaintiff's ability to *presently* perform his job.

Plaintiff's remaining kidney was stated to be healthy and also to be adequately performing the job of compensating for the kidney which was surgically removed.

As to ability to perform his job, plaintiff testified that he did, when twisting or stretching a certain way, get muscle cramps at the site of the incision. It appears that after returning to his job plaintiff completed his apprenticeship requirements and is now earning more wages than before.

Section 48-121 (2), R. R. S. 1943, provides that for partial disability compensation shall be 66⅔ percent of the difference between the wages received at the time of the injury and the earning power thereafter, not to exceed $45 per week or to continue beyond 300 weeks.

In Thinnes v. Kearney Packing Co., 173 Neb. 123, 112 N. W. 2d 732 (1962), it was stated that: "Disability under subdivisions (1) and (2) of section 48-121, R. S. Supp., 1957, refers to loss of earning power rather than loss of bodily function. Losses in bodily function,

so far as these subdivisions of the statute are concerned, are important only as they relate to earning capacity."

The fact that plaintiff is now earning more than before his injury is not conclusive of whether his earning power has been impaired. One of the determinative factors in reaching a conclusion on impairment of earning ability is the capacity of a workman to earn wages in the employment in which he was previously engaged or for which he is fitted. Anderson v. Cowger, 158 Neb. 772, 65 N. W. 2d 51 (1954).

In the present case, plaintiff has, since returning to work, completed his apprenticeship requirements and received a promotion and pay raise in the *same* employment in which previously engaged.

Even if the speculative medical testimony that plaintiff has incurred a 10 percent loss of total bodily function were accepted as true, this would be important only as it would relate to earning capacity, which relationship has not been shown by the testimony.

Directly on point is Frederick v. Cargill, Inc., 165 Neb. 589, 86 N. W. 2d 575 (1957). There plaintiff had a 10 percent permanent disability of the body as a whole due to a lung operation and partial removal of a rib. The plaintiff returned to the same type of work and at time of trial was receiving a higher wage. Even though he testified he was weaker and sometimes short of breath, this court found nothing upon which to base any reasonable calculation of impaired earning ability.

The theory behind workmen's compensation laws is that industry should bear the cost of economic disability which arises out of and in the course of employment. Plaintiff, here, has shown no compensable economic disability within the meaning of section 48-121 (2), R. R. S. 1943.

The judgment of the district court is correct and is affirmed.

AFFIRMED.