RONALD J. FEES, APPELLANT, V. RIVETT LUMBER COMPANY, APPELLEE.

423 N.W.2d 483

Filed May 20, 1988.    No. 87-716.

Robert E. O'Connor, Jr., for appellant.

Lynn A. Melson and Walter E. Zink II of Baylor, Evnen, Curtiss, Grimit & Witt, for appellee.

BOSLAUGH, WHITE, and SHANAHAN, JJ., and GITNICK and GARDEN, D. JJ.

SHANAHAN, J.

Ronald J. Fees appeals from the dismissal of his petition on rehearing in the Nebraska Workers' Compensation Court.

In 1978, while employed by Southern Lumber & Coal Co., Fees hurt his back in a work-related accident when he fell on some ice. After 2 weeks' absence from work as a result of that injury, Fees returned to his employment at Southern.

In February 1981 Fees was treated by Dr. Kenneth Browne for Fees' pain in his low back and right leg. According to Dr. Browne, Fees had had "back trouble off and on for several years with catches and stiffness and muscle spasm in the low back." Dr. Browne performed a laminectomy and removed Fees' herniated fourth lumbar disk. After that surgery, Fees continued working without any further back pain.

Fees went to work for Rivett Lumber Company in 1983. Although he was hired as a salesman, Fees "worked in general duties in the office and the yard . . . selling over the counter and helping out in the yard, making deliveries, whatever." On April 29, 1985, Fees was helping a customer carry a 16-foot board to the customer's truck, when the customer dropped his end of the board, causing Fees to fall backward into a lumber pile. Fees immediately experienced pain and told his supervisor about the fall, but continued to work in the lumberyard office for the remainder of that day. The following day, Fees "could hardly move" and went to his family physician, Dr. R.J. Dietz, who recommended bed rest and prescribed muscle relaxants and pain pills for Fees. Later, Dr. Dietz referred Fees to an orthopedic surgeon, Dr. Michael Morrison. On June 11, Dr. Morrison noted that Fees was suffering from "[a]cute lumbar strain." On June 21, after Fees failed to respond to treatment,

Dr. Morrison made the following observation: "No improvement. It's rather chronic pain involving his right leg with previous history of L4-L5 surgery." Dr. Morrison ordered a CAT scan for Fees, which disclosed a "herniated disk above [Fees'] previous surgery site." On August 29, Dr. Morrison diagnosed Fees' problem as "[l]umbar disk syndrome with right leg radiculopathy" and ordered a myelogram, which showed "disk herniation at L3-4." According to Dr. Morrison, Fees had sustained a herniated disk above the site of the 1981 surgery by Dr. Browne. Dr. Morrison recommended surgery at Fees' L3-4 area. Fees sought a second opinion from Dr. Robert Hacker, a neurologist. On November 4, 1985, Dr. Hacker noted:

> [Fees] has a history of lumbar surgery and now has recurrent low back and right lower extremity pain. A CT and myelogram suggested degenerative disk disease at the L3 and L4 disk level and since he is not improved with a conservative approach, I'm going to perform a selective L5 nerve block.

That same month, Dr. Hacker performed two "nerve blocks" on Fees, temporarily relieving the pain in Fees' back.

As part of a program in liquidation of the business, Rivett discharged Fees from employment in May 1986. On June 3, 1986, Dr. Hacker concluded that Fees had chronic low back pain and that surgical intervention was not warranted at that time. Dr. Hacker recommended physical therapy for Fees, muscle relaxants, and light work only.

On August 6, 1986, Dr. Joseph Gross, an orthopedic surgeon, examined Fees and noted:

> It is my opinion that the patient sustained a strain to the back as a result of the incident. I do not feel that his present complaints are a result of [the accident of April 29, 1985]; however, he does have degenerative changes in the lower portion of the back in the lowest disc which probably accounts for all of his present complaints.

Although Fees complained that he was unable to bend, twist, or stay on his feet for any prolonged period, the three-judge panel of the Workers' Compensation Court concluded that Fees "failed to submit sufficient medical evidence that the disability from which he suffers was caused by his accident . . .

and his petition must therefore be dismissed."

In his assignments of error, Fees contends that medical evidence established a causal relationship between the 1985 accident and his disability. Also, Fees complains that the Workers' Compensation Court attached too much weight to the evidence from Dr. Gross and disregarded various medical reports received in evidence. Findings of fact made by the Nebraska Workers' Compensation Court after rehearing have the same force and effect as a jury verdict in a civil case. Neb. Rev. Stat. § 48-185 (Reissue 1984); *Zaleski v. Farmland Foods*, 219 Neb. 157, 361 N.W.2d 523 (1985). In testing the sufficiency of evidence to support findings of fact made by the Nebraska Workers' Compensation Court after rehearing, the evidence must be considered in the light most favorable to the successful party. *Vredeveld v. Gelco Express*, 222 Neb. 363, 383 N.W.2d 780 (1986); *Knudsen v. Metropolitan Utilities Dist.*, 220 Neb. 902, 374 N.W.2d 56 (1985). Factual determinations by the Workers' Compensation Court will not be set aside on appeal unless such determinations are clearly erroneous. Regarding facts determined and findings made after rehearing in the Workers' Compensation Court, § 48-185 precludes the Supreme Court's substitution of its view of facts for that of the Workers' Compensation Court if the record contains evidence to substantiate the factual conclusions reached by the Workers' Compensation Court. *Vredeveld v. Gelco Express, supra*; *Gibson v. City of Lincoln*, 221 Neb. 304, 376 N.W.2d 785 (1985). As the trier of fact, the Nebraska Workers' Compensation Court is the sole judge of the credibility of witnesses and the weight to be given testimony. *Mendoza v. Omaha Meat Processors*, 225 Neb. 771, 408 N.W.2d 280 (1987). See, also, *Norris v. Iowa Beef Processors*, 224 Neb. 867, 402 N.W.2d 658 (1987).

In a workers' compensation case, by a preponderance of evidence the plaintiff must prove that plaintiff's employment caused the claimed injury or disability and that the claimed disability was not the progression of the plaintiff's condition present before the employment-related incident alleged as the cause of the claimed disability. See *Kingslan v. Jensen Tire Co.*, 227 Neb. 294, 417 N.W.2d 164 (1987). Presence of a preexisting

condition enhances the degree of a plaintiff's proof required to establish that the injury arose out of and in the course of employment. *Hayes v. A.M. Cohron, Inc.*, 224 Neb. 579, 400 N.W.2d 244 (1987). An employee has the burden to show the cause-and-effect relationship involving employment, an industrial injury, and disability. *Mendoza v. Omaha Meat Processors, supra*. As expressed in *Mendoza, supra*:

> Unless the character of an injury is objective, that is, an injury's nature and effect are plainly apparent, an injury is a subjective condition, requiring an opinion by an expert to establish the causal relationship between an incident and the injury as well as any claimed disability consequent to such injury.

225 Neb. at 785, 408 N.W.2d at 289.

"Determination of causation is, ordinarily, a matter for the trier of fact." *Mendoza v. Omaha Meat Processors, supra* at 778, 408 N.W.2d at 285.

In view of the medical evidence from Drs. Morrison and Hacker, the Workers' Compensation Court may have concluded that Fees was suffering from a degenerative disk condition unrelated to the 1985 accident. Also, the Workers' Compensation Court undoubtedly accepted Dr. Gross' opinion: "I do not feel that [Fees'] present complaints are a result of [the alleged accident]; however, he does have degenerative changes in the lower portion of the back in the lowest disc which probably accounts for all of his present complaints." Was Fees' fall in April 1985 the cause of his claimed disability? The Workers' Compensation Court answered that question in the negative. Although medical evidence described Fees' condition before and after his fall in April 1985, Fees' evidence did not include a medical opinion that the 1985 fall in any way caused Fees' disability. Therefore, Fees failed to introduce medical evidence that the disability in his back was the result of an accident arising out of and in the course of his employment with Rivett Lumber Company. As this court observed in *Caradori v. Frontier Airlines*, 213 Neb. 513, 516-17, 329 N.W.2d 865, 867 (1983):

> None of the physicians, whether testifying for Frontier Airlines or Caradori, stated that, in their opinion,

Caradori's disability *was* the result of an accident arising out of as well as in the course of employment.

. . . .

The claimant, Caradori, having only proved that the disability could have been caused by an accident arising out of and in the course of employment has not sustained her burden of proof.

(Emphasis in original.)

We have examined the exhibits which Fees contends the Workers' Compensation Court disregarded. While generally descriptive of Fees' condition, either before or after his fall in April 1985, none of the exhibits contain any specific information that the fall caused Fees' disability which is the subject of his claim against Rivett.

The findings of the Workers' Compensation Court are not clearly erroneous. Therefore, the judgment of the Workers' Compensation Court is affirmed.

AFFIRMED.