DUANE P. HEILIGER, APPELLEE, V. WALTERS AND HEILIGER
ELECTRIC, INC., A NEBRASKA CORPORATION, APPELLANT.
461 N.W.2d 565

Filed October 26, 1990.    No. 90-013.

460

Wesley C. Mues, of Knapp, Mues, Beavers, Luther & Fangmeyer, for appellant.

Andrew J. McMullen for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

SHANAHAN, J.

Walters and Heiliger Electric, Inc. (W & H Electric), appeals from an award on rehearing by the Nebraska Workers' Compensation Court in favor of Duane P. Heiliger (Heiliger). We affirm.

### STANDARD OF REVIEW

Findings of fact made by the Nebraska Workers' Compensation Court after rehearing have the same force and effect as a jury verdict in a civil case. [Citations omitted.] In testing the sufficiency of evidence to support findings of fact made by the Nebraska Workers' Compensation Court after rehearing, the evidence must be considered in the light most favorable to the successful party. [Citations omitted.] Factual determinations by the Workers' Compensation Court will not be set aside on

appeal unless such determinations are clearly erroneous. Regarding facts determined and findings made after rehearing in the Workers' Compensation Court, § 48-185 precludes the Supreme Court's substitution of its view of facts for that of the Workers' Compensation Court if the record contains evidence to substantiate the factual conclusions reached by the Workers' Compensation Court. [Citations omitted.] As the trier of fact, the Nebraska Workers' Compensation Court is the sole judge of the credibility of witnesses and the weight to be given testimony.

*Fees v. Rivett Lumber Co.*, 228 Neb. 617, 620, 423 N.W.2d 483, 486 (1988); *Mendoza v. Omaha Meat Processors*, 225 Neb. 771, 408 N.W.2d 280 (1987); Neb. Rev. Stat. § 48-185 (Reissue 1988).

## BACKGROUND FOR CLAIM

*Heiliger's Injury.*

As a shareholder and president of W & H Electric, a corporate electrical contractor, Heiliger was also employed as an electrician for W & H Electric and was frequently involved in its electrical work. In his duties as an electrician, Heiliger lifted heavy objects such as spools of copper wire. Before March 16, 1988, Heiliger was also responsible for onsite management of W & H Electric's projects, work which required that he drive to each of the company's projects and help individual workers. Heiliger's only office work involved W & H Electric's occasional bidding on new projects.

On March 16, 1988, Heiliger and a fellow worker, Eugene Walters, who was also the vice president and office manager of W & H Electric, were transferring "[t]housand foot reels of copper wire" from a pickup to a storage trailer at one of W & H Electric's jobsites. Each spool, weighing slightly more than 100 pounds, had to be moved from the pickup into the trailer's doorway, which was about 2 feet above the bed of the pickup. Heiliger, facing generally toward the spools in the pickup and with his feet stationary on the pickup's bed, lifted a spool and, in a "twisting motion," placed the spool in the trailer's elevated entry. During the process of lifting and twisting with a spool of

wire, Heiliger "felt a sensation in his back," and experienced "back and leg pain, mainly leg pain." According to Heiliger, "I knew that I'd—I'd injured myself." At that point, Heiliger told Walters that Heiliger had sustained "this [back] injury." A year earlier, Heiliger had a back malady of undetermined origin and had undergone disk surgery in March 1987, but had experienced no back problem for the "eight to nine" months immediately preceding March 1988. When Walters and Heiliger returned to W & H Electric's shop on March 16, Heiliger told other W & H Electric employees that he had injured his back earlier that day.

*Heiliger's Medical Treatment and Surgery.*

On account of persistent back pain, on March 30, 1988, Heiliger went to the office of Dr. Ramon R. Salumbides, the surgeon who had performed a hemilaminectomy on Heiliger in March 1987. Regarding Heiliger's previous hemilaminectomy, Dr. Salumbides had noted in 1987:

> Patient approximately three weeks now post lumbar laminectomy and disc excision of L5-S1 on the left side. He does not complain of any severe pain in his back or leg. . . . He occasionally has some tightness which is experienced in the lumbar area. Upon certain turning he will experience some achiness also in the posterior aspect of the left thigh but rather mild.
>
> EXAMINATION: The wound is healing well. No tenderness over the operative site. Straight leg raising test is bilaterally negative. His gait is normal. Patient is able to flex his back 90 degrees but would experience some discomfort in the back of the left thigh.
>
> Post-operative course is quite satisfactory.

At the time of Heiliger's March 1988 visit, Dr. Salumbides recorded the following:

> MAR 30 1988 [Heiliger] is returning for a consult because of recurrence of back pain. He states that two weeks ago he did some heavy lifting involving weights of up to about 100 pounds. He was lifting wires weighing that much and was transferring and twisting his back in the process. He then experienced sudden and severe pain in his

lumbar area with radiation towards the left buttock. Much of the pain is mostly concentrated over his lumbar are[a]. He feels that he describes a funny sensation in the posterior aspect of the left thigh but no actual pain. He has not had any treatment in the form of medications or physical therapy since that time. Over the last two days he feels much better. Sitting and walking is well tolerated. Turning from side to side while in bed on occasion causes some discomfort. Getting out of bed in the morning is also most difficult for him.

When Heiliger's back pain persisted, Dr. Salumbides, on April 28, 1988, reexamined Heiliger and later recommended another hemilaminectomy, which Dr. Salumbides performed on May 3, 1988, at the same general site as the previous hemilaminectomy, the fifth lumbar and first sacral vertebras.

Immediately after his 1988 hemilaminectomy, Heiliger recuperated at home. Dr. Salumbides initially recommended that Heiliger neither drive a vehicle nor lift heavy objects and, 30 days after the hemilaminectomy, placed Heiliger on a 20-pound limit in lifting. At that point, Heiliger returned to work, but was unable to tolerate the pain generated from standing for any significant time and was unable to perform manual labor for W & H Electric. During this postoperative employment with W & H Electric, Heiliger reviewed electrical plans and gave advice concerning the company's projects. When it became evident that Heiliger could not work the same as he had done before the injury in 1988, Heiliger sold his W & H Electric shares to Walters and left the company's employment on July 12, 1988, because W & H Electric needed only one office manager—Walters.

Subsequently, on January 10, 1989, Dr. Salumbides made the following notation in his records concerning Heiliger:

RECOMMENDATION: 1. Patient has been advised still to refrain from heavy lifting if at all possible.

2. On occasion he is allowed to lift 50 pounds. He states that prolonged sitting still bothers his back but not really much.

3. At this time I would think that patient is medically stable and certainly has had a satisfactory post-operative

course.

4. He has a permanent disability rating of 20 percent.

Dr. Louis J. Gogela, a neurosurgeon, examined Heiliger on behalf of W & H Electric and, on July 18, 1989, concluded:

Mr. Heiliger informed me of the injury he received to the back on March 16, 1988, when he was "unloading a load of copper wire." He apparently twisted his back. He did not actually fall. He experienced immediate pain in the left leg. He had no back pain with this. I am aware of the surgery that was performed on May 2, 1988, when a disc was removed at the L5 level on the left. Mr. Heiliger had had surgery to his back previously. He also told me he had recovered quite nicely from that surgery and that he was comfortable until the injury of March 16. He remarked that he "never was as well after the second operation as after the first operation."

. . . .

It is evident that Mr. Heiliger does have some residual stemming from the injury to his back and the encroachment upon the nerve root by the disc fragment and the subsequent surgery. Only a year had elapsed since the surgery. I would be inclined to suspect that Mr. Heiliger's present symtpoms [sic] are permanent. I would be inclined to assess his residual disability to his back at about 10%. I believe it would be reasonable to say this added degree of disability is probably 5% over an original 5% stemming from the first surgical procedure and the need for it.

Concerning Dr. Gogela's evaluation, above, Dr. Salumbides responded by letter on August 11, 1989:

I have recently been reviewing my records of [Heiliger]. During the patient's visit with me dated 1-10-89, I had given him a permanent disability rating of 20 percent.

You will note there is a discrepacy [sic] since Dr. Gogela has given a total of 10 percent disability rating. The letter I did send you dated August 1, 1989 expressed my complete agreement with Dr. Gogela's appraisal and evaluation of Mr. Heiliger even though I had initially given him a 20 percent disability rating.

It is really very difficult to specifically pin down the exact number or exact percentage of disability because at this time most of the patient's disability is related to the residual amount of pain that he has. As much as I hate to be nonspecific, I guess what I can say is that I'm not going to quarrel if anybody should come up with a 10 percent disability rating but certainly the disability rating that he has should not exceed 20 percent.

The August 1, 1989, letter mentioned by Dr. Salumbides in the foregoing report is not a part of the record.

*Heiliger's Impairment of Earning Capacity.*

A vocational consultant who had reviewed the medical evidence later submitted to the Workers' Compensation Court testified that Heiliger had suffered a loss of earning capacity "around 50%, approximately 50%" as the result of the "accident — or injury that [Heiliger] sustained in March of 1988." Also, according to the consultant, Heiliger's injury prevented his performing managerial and supervisory duties "in the competitive labor market."

In its award, the Workers' Compensation Court found that Heiliger had "sustained a 20 percent permanent partial disability to the body as a whole," that is, a 20-percent disability within the purview of Neb. Rev. Stat. § 48-121(2) (Reissue 1988), and concluded that Heiliger's back injury

was probably an aggravation or reinjury of a lumbar laminectomy [Heiliger] underwent in 1987. Dr. Gogala [sic], who examined [Heiliger] on behalf of the defendant, makes it clear that [Heiliger] suffers some residual stemming from the compensable injury of March 16, 1988. [Heiliger] is entitled to benefits as provided under the Nebraska Workers' Compensation Law.

In its award the Nebraska Workers' Compensation Court also awarded Heiliger compensation for 8 weeks of temporary total disability.

CLAIMANT'S BURDEN OF PROOF;
PREPONDERANCE OF EVIDENCE

In its first assignment of error, W & H Electric contends that medical evidence fails to establish a causal relationship between

the March 16, 1988, copper wire incident and Heiliger's physical injury and disability on which the award is based.

Neb. Rev. Stat. § 48-151(2) (Reissue 1988) provides that in all workers' compensation cases, an "accident" shall mean "an unexpected or unforeseen injury happening suddenly and violently . . . and producing at the time objective symptoms of an injury. The claimant shall have a burden of proof to establish by a preponderance of the evidence that such unexpected or unforeseen injury was in fact caused by the employment."

In a workers' compensation case, by a preponderance of evidence a claimant must prove that the claimant's employment proximately caused the claimed injury or disability and thereby correspondingly negate that a claimant's condition existing independent of the claimant's employment and before a work-related incident alleged to be a cause of the claimed disability is the sole cause of the disability for which compensation is sought. *Fees v. Rivett Lumber Co.*, 228 Neb. 617, 423 N.W.2d 483 (1988). Under the preceding rule, proof that employment proximately caused a compensable injury and disability simultaneously establishes that a claimant's disability is not solely attributable to deterioration of an employee's antecedent condition which has resulted in disability.

In *Brokaw v. Robinson*, 183 Neb. 760, 764, 164 N.W.2d 461, 465 (1969), this court stated that "the presence of a preexisting disease or condition would enhance the degree of proof required to establish that an injury arose out of and in the course of employment." Moreover, in *Brokaw* the court concluded that "there was no evidence that the plaintiff had any preexisting disease or condition . . . ." *Id.* Thus, the degree or standard of proof in relation to a claimant's preexisting disability, disease, or condition was not an issue in *Brokaw*. Nevertheless, the foregoing proposition concerning an enhanced degree of proof was expressed in *Brokaw* without supporting authority and, more important, without any explanation for the departure from the statutory standard in § 48-151(2) (Cum. Supp. 1965), which was identical to the current § 48-151(2) concerning a claimant's burden of proof and the requisite preponderance of evidence. In the interim between *Brokaw* and enactment of the present § 48-151(2), the

claimant's burden of proof and the preponderance of evidence standard have remained unchanged in the Workers' Compensation Act. See § 48-151(2) (Cum. Supp. 1965 & Reissues 1968, 1974, 1978, 1984 & 1988). Also, as reflected in this court's decisions before *Brokaw*, a claimant is entitled to an award under the Workers' Compensation Act for a work-related injury and disability if the claimant shows, by a preponderance of evidence, that the claimant sustained an injury and disability proximately caused by an accident which arose out of and in the course of the claimant's employment, even though a preexisting disability or condition has combined with the present work-related injury to produce the disability for which the claimant seeks an award. See, *Cole v. Cushman Motor Works*, 159 Neb. 97, 65 N.W.2d 330 (1954); *Tucker v. Paxton & Gallagher Co.*, 153 Neb. 1, 43 N.W.2d 522 (1950).

After *Brokaw*, decisions of this court have reiterated, verbatim or in substance, an "enhanced degree of proof" requirement in a workers' compensation case involving a preexisting disability or condition; for example, *Benson v. Barnes & Barnes Trucking*, 217 Neb. 865, 870, 354 N.W.2d 127, 131 (1984): "[W]e acknowledge that where there is knowledge of a preexisting condition, the claimant carries a greater burden of proof." See, also, *Gilbert v. Sioux City Foundry*, 228 Neb. 379, 382, 422 N.W.2d 367, 370 (1988): "[T]he presence of a preexisting condition enhances the degree of proof required to establish that the injury arose out of and in the course of employment." For other illustrative decisions expressing the standard of an enhanced degree of proof by a claimant, see, *Kingslan v. Jensen Tire Co.*, 227 Neb. 294, 417 N.W.2d 164 (1987); *Hayes v. A.M. Cohron, Inc.*, 224 Neb. 579, 400 N.W.2d 244 (1987); and *Hyatt v. Kay Windsor, Inc.*, 198 Neb. 580, 254 N.W.2d 92 (1977). Thus, in decisions such as *Benson*, *Gilbert*, *Kingslan*, *Hayes*, and *Hyatt*, this court has expressed the rule that "a preexisting condition enhances the degree of proof required to establish" that a work-related injury resulted in a compensable disability, a rule which supplies no definition or characterization of the "enhanced degree of proof" and which is contrary to the statutory standard prescribed in § 48-151(2) regarding a claimant's burden of proof and a preponderance of

evidence.

Fairly recently, in *Spangler v. State*, 233 Neb. 790, 448 N.W.2d 145 (1989), this court acknowledged that a workers' compensation claimant may recover when an injury, arising out of and in the course of employment, combines with a preexisting condition to produce disability, notwithstanding that in the absence of the preexisting condition no disability would have resulted. Also, we stated in *Spangler*:

> To sustain an award in a workers' compensation case involving a preexisting disease or condition, it is sufficient to show that the injury resulting from an accident arising out of and in the course of employment and the preexisting disease or condition combined to produce disability [citation omitted], or that the employment injury aggravated, accelerated, or inflamed the preexisting condition [citations omitted].

233 Neb. at 795, 448 N.W.2d at 149.

Although a claimant with a preexisting disability or condition may face various obstacles, both medical and legal, and must satisfy the statutory requirements for an award under the Nebraska Workers' Compensation Act, an enhanced degree of proof, establishing a cause-and-effect relationship between a work-related injury and consequent disability, is not among a claimant's burdens for obtaining an award under the Nebraska Workers' Compensation Act. The "enhanced degree of proof" standard actually conflicts with the clear language and express provision of § 48-151(2) of the Nebraska Workers' Compensation Act governing prosecution of a worker's claim under the act. Consequently, in adherence to § 48-151(2) of the Nebraska Workers' Compensation Act, we return to the statutory standard contained in § 48-151(2) and now disapprove of language in this court's previous decisions, such as *Brokaw v. Robinson*, 183 Neb. 760, 164 N.W.2d 461 (1969); *Benson v. Barnes & Barnes Trucking, supra*; *Hayes v. A.M. Cohron, Inc., supra*; and *Gilbert v. Sioux City Foundry, supra*, which has imposed an enhanced degree of proof by an employee prosecuting a claim under the Nebraska Workers' Compensation Act.

Thus, for an award based on disability, a claimant must

establish, by a preponderance of the evidence, that the employment proximately caused an injury which resulted in disability compensable under the Workers' Compensation Act. *Grauerholz v. Cornhusker Packing Co.*, 230 Neb. 641, 432 N.W.2d 831 (1988). See, also, *Mendoza v. Omaha Meat Processors*, 225 Neb. 771, 408 N.W.2d 280 (1987). "An employee has the burden to show the cause-and-effect relationship involving employment, an industrial injury, and disability." *Fees v. Rivett Lumber Co.*, 228 Neb. 617, 621, 423 N.W.2d 483, 486 (1988).

As expressed in *Mendoza v. Omaha Meat Processors, supra* at 778, 408 N.W.2d at 285: "Determination of causation is, ordinarily, a matter for the trier of fact."

In view of the medical evidence in Heiliger's case, the Workers' Compensation Court, in resolving a factual question, could have reasonably concluded, and did conclude, that Heiliger sustained a work-related injury on March 16, 1988, which caused the disability involving his back. First, as expressed by Dr. Salumbides in his notation of March 30, 1988:

> [Heiliger] states that two weeks ago [March 16, 1988,] he did some heavy lifting involving weights of up to about 100 pounds. He was lifting wires weighing that much and was transferring and twisting his back in the process. He then experienced sudden and severe pain in his lumbar area . . . .

Dr. Gogela provided the further diagnostic information:

> Mr. Heiliger informed me of the injury he received to the back on March 16, 1988, when he was "unloading a load of copper wire." He apparently twisted his back. . . .
>
> . . . .
>
> It is evident that Mr. Heiliger does have some residual stemming from the injury to his back and the encroachment upon the nerve root by the disc fragment and the subsequent surgery.

Thus, there is sufficient evidence to support the factual conclusion by the Nebraska Workers' Compensation Court, namely, on March 16, 1988, Heiliger was involved in a work-related accident when he twisted his back while moving the copper wire, an accident which caused injury and

permanent disability to Heiliger. For that reason, we are unable to state that the Nebraska Workers' Compensation Court was clearly erroneous in its factual determination that Heiliger's accident of March 16, 1988, was the cause of his injury and permanent disability. W & H Electric's first assignment of error is without merit.

## HEILIGER'S DISABILITY

W & H Electric also contends that there is insufficient evidence to support the Workers' Compensation Court's finding that Heiliger was temporarily totally disabled for 8 weeks and, thereafter, sustained a 20-percent permanent partial disability to the body as a whole.

*Temporary Total Disability.*

W & H Electric argues that Heiliger was not temporarily totally disabled, because he returned to work 30 days after the hemilaminectomy in 1988 and, from the date of the accident until he left employment with W & H Electric some 4 months later, received the same salary as that paid before the accident. An employee's disability as a basis for compensation under § 48-121(1) and (2) is determined by the employee's diminution of employability or impairment of earning power or earning capacity, and is not necessarily determined by a physician's evaluation and assessment of the employee's loss of bodily function. *Kleiva v. Paradise Landscapes*, 227 Neb. 80, 416 N.W.2d 21 (1987); *Thom v. Lutheran Medical Center*, 226 Neb. 737, 414 N.W.2d 810 (1987); *Norris v. Iowa Beef Processors*, 224 Neb. 867, 402 N.W.2d 658 (1987); *Akins v. Happy Hour, Inc.*, 209 Neb. 236, 306 N.W.2d 914 (1981). In relation to "total disability" under § 48-121(1) and "disability partial in character" under § 48-121(2), "temporary" and "permanent" refer to the duration of disability, while "total" and "partial" refer to the degree or extent of the diminished employability or impairment of earning power or earning capacity.

As Professor Arthur Larson observes:

[T]otal disability may be found in the case of workers who, while not altogether incapacitated for work, are so handicapped that they will not be employed regularly in any well-known branch of the labor market. The essence

of the test is the probable dependability with which claimant can sell his services in a competitive labor market, undistorted by such factors as business booms, sympathy of a particular employer or friends, temporary good luck, or the superhuman efforts of the claimant to rise above his crippling handicaps.

2 A. Larson, The Law of Workmen's Compensation § 57.51(a) at 10-164.68, 164.68(18) (1989). See, also, *Gunderson v. City of Ashland*, 701 S.W.2d 135 (Ky. 1985) (notwithstanding an employee's return to work after a work-related injury, the return to work does not necessarily terminate an employee's existing total disability when the employee's disability prevents performance of the employee's customary work and competition for employment in the job market). Thus, an employee's return to work does not in every case terminate an employee's total disability from a work-related injury and does not preclude a finding that the employee's total disability continues notwithstanding the return to work.

If an employee, after a work-related injury, receives wages equal to or greater than the wages received before the injury, the wages may be considered in the determination whether an employee has sustained an impairment of earning capacity. *Breland v. Ceco Steel Products Corp.*, 173 Neb. 354, 113 N.W.2d 528 (1962). Cf. *Guerra v. Iowa Beef Processors, Inc.*, 211 Neb. 433, 318 N.W.2d 887 (1982) (earning power is not synonymous with wages).

Before Heiliger's 1988 hemilaminectomy, his employment required daily lifting of heavy electrical items such as spools of copper wire. After his 1988 hemilaminectomy, Heiliger could no longer perform manual labor for W & H Electric. According to a vocational expert, Heiliger's injury resulted in a 50-percent loss of earning capacity and prevented Heiliger's entry into the competitive labor market, since he could no longer perform the managerial and supervisory duties for or as an electrical contractor. When Heiliger realized that he could no longer do the work which he had done before the 1988 injury, Heiliger sold his business interest to Walters and left employment with W & H Electric.

The Workers' Compensation Court determined that

Heiliger's total disability was temporary, from May 3, 1988, the date of the hemilaminectomy, to June 27, 1988, inclusively. The particular significance of June 27, 1988, in relation to termination of Heiliger's total disability is unexplained by the parties and undisclosed by the record. When an injured worker has attained maximum physical recovery after a work-related injury, any residual disability from a compensable injury is permanent and prevents the worker's entitlement to compensation for temporary disability. See *Aldrich v. ASARCO, Inc.*, 221 Neb. 126, 375 N.W.2d 150 (1985). The question whether an injured employee has reached maximum physical recovery after medical treatment is, generally, a factual question for the Workers' Compensation Court. *Bindrum v. Foote & Davies*, 235 Neb. 903, 457 N.W.2d 828 (1990).

In his clinical notes dated January 10, 1989, Dr. Salumbides stated that "[a]t this time I would think that [Heiliger] is medically stable and certainly has had a satisfactory post-operative course. . . . He has a permanent disability rating of 20 percent." This medical evidence would have supported a finding of Heiliger's temporary total disability beyond June 27, 1988. Yet, the Workers' Compensation Court found that Heiliger's temporary total disability terminated on June 27, 1988, a date which is considerably earlier than January 10, 1989, when Dr. Salumbides expressed his evaluation that Heiliger had "a permanent disability of 20 percent." Consequently, W & H Electric has no ground to complain of a determination that Heiliger's temporary total disability terminated earlier than January 10, 1989. Heiliger has not cross-appealed to raise the question whether he was temporarily and totally disabled beyond June 27, 1988. Therefore, the Nebraska Workers' Compensation Court's factual determination concerning Heiliger's temporary total disability is not clearly erroneous.

We note that W & H Electric argues only that Heiliger's return to work and receipt of wages prevent an award for temporary total disability, and does not raise the issue whether the Workers' Compensation Court should have allowed a credit against Heiliger's award in view of wages paid to Heiliger during his temporary total disability. Therefore, we express no

opinion about that aspect of Heiliger's claim and award.

*Permanent Partial Disability.*

W & H Electric argues that the evidence fails to support a finding that Heiliger sustained a 20-percent permanent partial disability, because Dr. Gogela evaluated or assessed Heiliger's permanent partial disability at 10 percent to the body as a whole and allocated one-half of Heiliger's permanent partial disability, that is, 5 percent of his disability, to Heiliger's 1987 injury and one-half of the disability to Heiliger's 1988 work-related injury. We have stated that "an employee is entitled to full compensation, notwithstanding the fact that his present disability is the result of an aggravated preexisting condition. Absent the provisions of § 48-128, an employer would be liable for all of the injury." *Benson v. Barnes & Barnes Trucking,* 217 Neb. 865, 875, 354 N.W.2d 127, 133 (1984). See, also, Neb. Rev. Stat. § 48-128 (Reissue 1988) (injury increasing disability; Second Injury Fund). As mentioned in this opinion under the sectional heading "Claimant's Burden of Proof; Preponderance of Evidence," a claimant is entitled to an award under the Workers' Compensation Act for a work-related injury disability if the claimant shows, by a preponderance of evidence, that the claimant sustained the injury and disability proximately caused by an accident which arose out of and in the course of the claimant's employment, even though a preexisting disability or condition had combined with the present work-related injury to produce the disability for which the claimant seeks an award. *Spangler v. State,* 233 Neb. 790, 448 N.W.2d 145 (1989); *Cole v. Cushman Motor Works,* 159 Neb. 97, 65 N.W.2d 330 (1954); *Tucker v. Paxton & Gallagher Co.,* 153 Neb. 1, 43 N.W.2d 522 (1950). Thus, allocation of disability attributable to a work-related injury and disability attributable to an antecedent or preexisting disability or condition which may or may not be work-related is irrelevant in this case inasmuch as there is no claim against the Second Injury Fund.

W & H Electric also argues that Dr. Salumbides renounced his determination that Heiliger sustained a 20-percent permanent partial disability and adopted Dr. Gogela's determination of 10 percent permanent partial disability;

therefore, the evidence does not support a finding of 20 percent permanent partial disability. W & H Electric relies on Dr. Salumbides' statement in his written report of August 11, 1989: "I . . . expressed my complete agreement with Dr. Gogela's appraisal and evaluation of Mr. Heiliger even though I had initially given him a 20 percent disability." However, in that same report Dr. Salumbides also stated that "[i]t is really very difficult to specifically pin down the exact . . . percentage of disability . . . but certainly the disability rating that he has should not exceed 20 percent."

A fact finder or trier of fact may accept or reject an opinion from an expert witness. *Joyner v. Steenson*, 227 Neb. 766, 420 N.W.2d 278 (1988); *Cathcart v. Blacketer*, 217 Neb. 755, 351 N.W.2d 70 (1984).

Although Dr. Salumbides' expressions appear somewhat inconsistent or even contradictory, the Workers' Compensation Court may have eliminated any confusion by its outright rejection of Dr. Gogela's evaluation concerning Heiliger's disability. Even if Dr. Salumbides' statements are contradictory, in *Vredeveld v. Gelco Express*, 222 Neb. 363, 369, 383 N.W.2d 780, 783 (1986), we stated:

> "A conflict or contradiction regarding an expert's opinion need not result from opinions expressed by different experts. A conflict or contradiction of opinions may arise in the course of testimony given by the same expert witness. A good faith conflict due to self-contradiction of an expert's opinions presents a question to be resolved by the trier of fact."

The Workers' Compensation Court, as the trier of fact, was entitled to weigh the evidence in light of the source of the evidence, consider the medical relationship between Heiliger and the physician who cared for or examined Heiliger and supplied medical information, resolve in favor of Heiliger any conflicts in the evidence, disregard Dr. Gogela's evaluation of Heiliger's permanent partial disability, and accept Dr. Salumbides' initial determination that Heiliger had sustained a disability of 20 percent to the body as a whole as the result of the accident on March 16, 1988.

The award of the Nebraska Workers' Compensation Court is

supported by the evidence, is not clearly erroneous, and is, therefore, affirmed. Since W & H Electric has failed to reduce the amount of Heiliger's award reviewed in this appeal, we order W & H Electric to pay Heiliger $1,500 to be applied toward the fee of Heiliger's lawyer for services in this court. See Neb. Rev. Stat. § 48-125(1) (Reissue 1988) (attorney fee for employee when employer appeals and fails to obtain a reduction of an award to the employee).

AFFIRMED.