HARVEY J. SCHMID, APPELLEE, V. NEBRASKA
INTERGOVERNMENTAL RISK MANAGEMENT ASSOCIATION AND
CUSTER COUNTY, NEBRASKA, APPELLANTS.

476 N.W.2d 243

Filed November 1, 1991.   No. 91-085.

Dallas D. Jones, of Baylor, Evnen, Curtiss, Grimit & Witt, for appellants.

William J. Ross, of Ross, Schroeder & Brauer, for appellee.

HASTINGS, C.J., WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

SHANAHAN, J.

Nebraska Intergovernmental Risk Management Association (NIR) and Custer County, Nebraska, appeal from a workers' compensation award on rehearing to Harvey J. Schmid and contend that the compensation court erred (1) by finding that Schmid's medical treatment and disability were compensable and (2) in the method of determining Schmid's disability benefits.

## STANDARD OF REVIEW

"Findings of fact made by the Nebraska Workers' Compensation Court after rehearing have the same force and effect as a jury verdict in a civil case. . . . In testing the sufficiency of evidence to support findings of fact made by the Nebraska Workers' Compensation Court after rehearing, the evidence must be considered in the light

most favorable to the successful party. . . . Factual determinations by the Workers' Compensation Court will not be set aside on appeal unless such determinations are clearly erroneous. Regarding facts determined and findings made after rehearing in the Workers' Compensation Court, § 48-185 precludes the Supreme Court's substitution of its view of facts for that of the Workers' Compensation Court if the record contains evidence to substantiate the factual conclusions reached by the Workers' Compensation Court. . . . As the trier of fact, the Nebraska Workers' Compensation Court is the sole judge of the credibility of witnesses and the weight to be given testimony."

*Tarvin v. Mutual of Omaha Ins. Co.*, 238 Neb. 851, 852, 472 N.W.2d 727, 729 (1991). Accord, *Roan Eagle v. State*, 237 Neb. 961, 468 N.W.2d 382 (1991); *Heiliger v. Walters & Heiliger Electric, Inc.*, 236 Neb. 459, 461 N.W.2d 565 (1990); *Fees v. Rivett Lumber Co.*, 228 Neb. 617, 423 N.W.2d 483 (1988); *Mendoza v. Omaha Meat Processors*, 225 Neb. 771, 408 N.W.2d 280 (1987). See Neb. Rev. Stat. § 48-185 (Reissue 1988).

"[F]or an award based on disability, a claimant must establish, by a preponderance of the evidence, that the employment proximately caused an injury which resulted in disability compensable under the Workers' Compensation Act." *Heiliger v. Walters & Heiliger Electric, Inc., supra* at 468-69, 461 N.W.2d at 572-73. Accord, *Tarvin v. Mutual of Omaha Ins. Co., supra*; *Roan Eagle v. State, supra*. See, also, *Grauerholz v. Cornhusker Packing Co.*, 230 Neb. 641, 432 N.W.2d 831 (1988).

In considering whether evidence sustains a finding for an award or dismissal by the Nebraska Workers' Compensation Court on rehearing, an appellate court does not reweigh evidence, but considers the compensation court's award or dismissal in a light most favorable to the successful party and resolves evidential conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence.

*Roan Eagle v. State, supra* at 962-63, 468 N.W.2d at 384-85.

## FACTUAL BACKGROUND

Schmid began working as a general laborer for Custer County on May 1, 1989, and was injured on May 3, while helping a mechanic replace dual rear wheels on a county truck. While replacing a set of duals, Schmid braced his feet and grasped one of the truck tires, but his hands slipped from the tire, causing Schmid to stumble backward and later experience pain in his right leg and lower back. The mechanic working with Schmid saw him stumble backward while the pair was replacing the truck tires. Later on May 3, after the tire incident, Schmid's coemployees noted that he was in pain and that Schmid had difficulty in moving his right leg. That night, as a result of the pain in his back and right leg, Schmid had difficulty sleeping. The following morning, Schmid's wife drove him to a hospital emergency room. Schmid's physicians undertook a program of conservative medical treatment to alleviate Schmid's condition. When that approach failed to result in improvement, Dr. Ramon R. Salumbides, a neurosurgeon, performed an extensive hemilaminectomy at the L3-4 level of Schmid's spine on May 11 and excised a herniated disk with its extruded fragments. Schmid was unable to return to work until June 26, 1989, when he resumed "light duty" labor as a truckdriver and was limited to "relatively sedentary type work," although Schmid was paid wages at a rate 42 cents per hour greater than the wage rate paid to Schmid on May 3, 1989.

Before his employment with Custer County, Schmid had sustained a work-related injury in 1986, when he injured his back while he was climbing a ladder, an injury which necessitated a partial hemilaminectomy at L3-4 in Schmid's back. After the 1986 surgery, Schmid experienced no back problem, resumed labor which involved carrying various objects, and needed no further medical attention regarding his back until the injury on May 3, 1989. As expressed by Dr. Salumbides, "It is my opinion based on medical probability that the recurrent herniated disc for which Mr. Schmidt [sic] had surgery on May 11, 1989, was secondary to the accident that occurred while at work on May 3, 1989." Also, Dr. Salumbides expressed the opinion that "based on medical probability [Schmid] will have a permanent physical

impairment of approximately twenty percent because of the previous back surgery as well as recurrent pain in his back and right lower extremity." A vocational rehabilitation expert, having considered Schmid's injury in relation to his work training and experience or skills, concluded that Schmid "has suffered a loss of earning capacity of approximately 15 percent as a result of his back injury on May 3, 1989."

In its award, the Workers' Compensation Court concluded that Schmid was injured as the result of a work-related accident in his employment on May 3, 1989, and that he had sustained a "20 per cent permanent partial disability to the body as a whole."

## DISCUSSION

Without restating all the evidence previously noted in the factual background section, we conclude that evidence sustains the compensation court's finding that Schmid was involved in a work-related accident on May 3, 1989, which resulted in his bodily injury and caused a physical disability to Schmid.

Neb. Rev. Stat. § 48-121(2) (Reissue 1988) provides that compensation awarded a claimant for partial disability is based on a percentage "of the difference between the wages received at the time of the injury and the earning power of the employee thereafter." NIR and Custer County argue that the compensation court failed to follow the statutory directive in § 48-121(2), because the compensation court awarded Schmid benefits based on 20 percent permanent partial disability to the body as a whole despite Schmid's postaccident wage rate at 42 cents per hour more than his wage rate when he was injured on May 3, 1989.

In *Thom v. Lutheran Medical Center*, 226 Neb. 737, 740, 414 N.W.2d 810, 813-14 (1987), this court stated:

> Earning power, as used in Neb. Rev. Stat. § 48-121(2) (Cum. Supp. 1986), is measured by an evaluation of a worker's general eligibility to procure and hold employment, the worker's capacity to perform the required tasks, and the worker's ability to earn wages in employment for which he or she is engaged or fitted. [Citation omitted.] Earning power is synonymous neither

with wages [citation omitted] nor with loss of physical function [citation omitted]. Nonetheless, loss of physical function may affect a worker's eligibility to procure and hold employment, his or her capacity to perform the required tasks, and the ability to earn wages in employment for which he or she is engaged or fitted. Thus, while there is no numerical formula for determining one's earning power following an injury to the body as a whole [citation omitted], the extent of such impairment or disability may provide a basis for determining the amount of that worker's loss of earning power.

Also, we stated in *Sherard v. Bethphage Mission, Inc.*, 236 Neb. 900, 912, 464 N.W.2d 343, 351 (1991):

[A]ccording to Professor Arthur Larson, "Compensable disability is generally defined as inability, as the result of a work-connected injury, to perform or obtain work suitable to claimant's qualifications and training." 2 A. Larson, The Law of Workmen's Compensation § 57.22(a) at 10-129 (1989). Hence, the test for a worker's employability after a compensable injury is whether the worker can compete in the open and normal labor market for the worker's services.

While it is true that disability under § 48-121(2) is expressed " 'in terms of employability and earning capacity rather than in terms of loss of bodily function,' " *McGee v. Panhandle Technical Sys.*, 223 Neb. 56, 64, 387 N.W.2d 709, 714 (1986), this court has, on numerous occasions, followed the rule that " 'the mere fact that after the injury the employee receives, or is offered, his former wages, or a larger sum, does not necessarily preclude recovery of compensation under the various workmen's compensation statutes.' " *Micek v. Omaha Steel Works*, 135 Neb. 449, 451, 282 N.W. 262, 264 (1938). See, also, *Guerra v. Iowa Beef Processors, Inc.*, 211 Neb. 433, 318 N.W.2d 887 (1982); *Akins v. Happy Hour, Inc.*, 209 Neb. 236, 306 N.W.2d 914 (1981); *Colgrove v. City of Wymore*, 184 Neb. 712, 171 N.W.2d 639 (1969); *Anderson v. Cowger*, 158 Neb. 772, 65 N.W.2d 51 (1954).

In *Guerra v. Iowa Beef Processors, Inc., supra*, this court considered an award to a laborer who, after a work-related

injury, returned to his former employment and earned wages at a rate 48 cents per hour above the rate paid at the time of injury, although Guerra had a 10-percent loss of bodily function from the accident. In upholding the award to Guerra, this court stated:

> The fact that an employer is willing to continue to employ a person whose ability to perform his tasks has been restricted ought not to destroy the employee's rights to compensation benefits.
>
> . . . "[T]he Workmen's Compensation Court was entitled to take into consideration not only the 10 percent loss of bodily function because of the lumbar laminectomy, but also the facts that the plaintiff was engaged in common labor and that that was his primary skill. His ability to lift was impaired and his employability was thus reduced."

*Id.* at 437, 318 N.W.2d at 889 (quoting from *Sidel v. Travelers Ins. Co.*, 205 Neb. 541, 288 N.W.2d 482 (1980)).

As Professor Larson observes, "It is uniformly held . . . without regard to statutory variations in the phrasing of the test, that a finding of disability may stand even when there is evidence of some actual post-injury earnings equaling or exceeding those received before the accident." 2 A. Larson, The Law of Workmen's Compensation § 57.21(c) at 10-101 (1989) (citing, inter alia, *Guerra v. Iowa Beef Processors, Inc., supra*; *Akins v. Happy Hour, Inc., supra*; *Ludwickson v. Central States Electric Co.*, 142 Neb. 308, 6 N.W.2d 65 (1942)). Thus,

> [i]f an employee, after a work-related injury, receives wages equal to or greater than the wages received before the injury, the wages may be considered in the determination whether an employee has sustained an impairment of earning capacity. *Breland v. Ceco Steel Products Corp.*, 173 Neb. 354, 113 N.W.2d 528 (1962). Cf. *Guerra v. Iowa Beef Processors, Inc.*, 211 Neb. 433, 318 N.W.2d 887 (1982) (earning power is not synonymous with wages).

*Heiliger v. Walters & Heiliger Electric, Inc.*, 236 Neb. 459, 471, 461 N.W.2d 565, 574 (1990).

In Schmid's case, as in *Guerra, supra*, a worker's ability to lift

objects has been impaired by injury and presents a question whether the worker has sustained a reduction in earning power or earning capacity. "Whether a claimant has sustained disability which is total or partial and which is temporary or permanent is a question of fact." *Sherard v. Bethphage Mission, Inc.*, 236 Neb. 900, 912, 464 N.W.2d 343, 351 (1991). Accord *Roan Eagle v. State*, 237 Neb. 961, 468 N.W.2d 382 (1991). Consequently, evidence in Schmid's case is sufficient for the compensation court's finding that Schmid suffered a 20-percent permanent partial disability to the body as a whole, that is, a 20-percent decrease or reduction in earning power or earning capacity. In view of the record and the standard of review for this court, we cannot conclude that the Nebraska Workers' Compensation Court, as the sole judge of witness credibility and the weight to be given a witness' testimony, was clearly erroneous in its finding. Cf. *Roan Eagle v. State, supra.*

Hence, the compensation court's award to Schmid is supported by evidence, is not clearly erroneous, and is, therefore, affirmed.

Because NIR and Custer County have failed to reduce the amount of Schmid's award reviewed in this appeal, we order that the appellants shall pay to Schmid $1,000 to be applied toward the fee of Schmid's lawyer for services in this court. See Neb. Rev. Stat. § 48-125(1) (Reissue 1988) (attorney fee for employee when employer appeals and fails to obtain a reduction of an award to the employee). See, however, *Kraft v. Paul Reed Constr. & Supply, ante* p. 257, 263, 475 N.W.2d 513, 517-18 (1991):

> [I]n an appeal of any type of case filed after December 31, 1991, in this court or the Court of Appeals, any party who claims entitlement under the law or a uniform course of practice to an attorney fee shall, at the time of filing his, her, or its brief, also file a separate claim for such fees supported by an affidavit which justifies the amount sought.

AFFIRMED.

BOSLAUGH, J., participating on briefs.