contacts with the State of Nebraska. Although the Web site used to post the advertisement is interactive, the contacts created by the Web site are unrelated to Abdouch's cause of action. Furthermore, under the *Calder* effects test, the pleadings fail to establish that Lopez and KLB expressly aimed their tortious conduct at the State of Nebraska. For these reasons, Lopez and KLB could not have anticipated being haled into a Nebraska court for their online advertisement.

AFFIRMED.

MILLER-LERMAN, J., not participating.

———————

PAT ZWIENER, APPELLEE AND CROSS-APPELLANT,
v. BECTON DICKINSON-EAST, APPELLANT
AND CROSS-APPELLEE.

___ N.W.2d ___

Filed April 19, 2013.    No. S-12-563.

1. **Workers' Compensation.** Whether a plaintiff in a Nebraska workers' compensation case is totally disabled is a question of fact.
2. **Workers' Compensation: Evidence: Appeal and Error.** In testing the sufficiency of the evidence to support the findings of fact in a workers' compensation case, every controverted fact must be resolved in favor of the successful party and the successful party will have the benefit of every inference that is reasonably deducible from the evidence.
3. **Workers' Compensation: Words and Phrases.** Temporary disability is the period during which the employee is submitting to treatment, is convalescing, is suffering from the injury, and is unable to work because of the accident.
4. **Workers' Compensation.** Total disability exists when an injured employee is unable to earn wages in either the same or a similar kind of work he or she was trained or accustomed to perform or in any other kind of work which a person of the employee's mentality and attainments could perform.
5. ____. The level of a worker's disability depends on the extent of diminished employability or impairment of earning capacity, and does not directly correlate to current wages.
6. ____. An employee's return to work at wages equal to those received before the injury may be considered, but it does not preclude a finding that the employee is either partially or totally disabled.
7. ____. Earning capacity determinations should not be distorted by factors such as business booms, sympathy of a particular employer or friends, temporary good luck, or the superhuman efforts of the claimant to rise above his or her crippling handicaps.

8. _____. If payment of wages upon an employee's return to work was intended to be in lieu of indemnity benefits for which the employer accepted responsibility, then credit for those wages is allowed.

9. **Workers' Compensation: Rules of Evidence.** As a general rule, the Nebraska Workers' Compensation Court is not bound by the usual common-law or statutory rules of evidence.

10. **Workers' Compensation: Evidence: Due Process: Appeal and Error.** Subject to the limits of constitutional due process, the admission of evidence is within the discretion of the Nebraska Workers' Compensation Court, whose determination in this regard will not be reversed upon appeal absent an abuse of discretion.

Appeal from the Workers' Compensation Court: Thomas E. Stine, Judge. Affirmed in part, and in part reversed and remanded with directions.

Abigail A. Wenninghoff, of Larson, Kuper & Wenninghoff, P.C., L.L.O., for appellant.

Ryan C. Holsten, of Atwood, Holsten, Brown & Deaver Law Firm, P.C., L.L.O., for appellee.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, and Cassel, JJ.

McCormack, J.

## NATURE OF CASE

The employer appeals from an award of the Nebraska Workers' Compensation Court, and the employee cross-appeals. We hold that an employee who leaves a job with an employer responsible for an injury in order to pursue more desirable employment does not waive temporary total disability benefits simply because the employer responsible for the injury would have accommodated light-duty restrictions during postsurgical recovery periods necessitated by the injury.

## BACKGROUND

Pat Zwiener filed a petition against Becton Dickinson-East (Becton) in the compensation court, seeking temporary total disability benefits, compensation for certain unpaid medical bills, mileage expenses, and attorney fees under Neb. Rev. Stat. § 48-125 (Reissue 2010). Zwiener had not yet reached maximum medical improvement and did not seek a permanent impairment rating.

Zwiener suffered a shoulder injury arising out of and in the course of his employment with Becton on August 20, 2009. The injury was originally diagnosed as a strain. Zwiener was treated conservatively with corticosteroid injections, anti-inflammatories, and physical therapy. Zwiener was advised that he could continue working without restrictions.

On March 12, 2010, Zwiener resigned his employment with Becton and began working for Sapp Brothers, Inc., as a driver. The choice of new employment was unrelated to the injury. Zwiener explained that he liked being outdoors and that the pay was better. According to Becton, Zwiener knew surgery for the injury might be a possibility. But Zwiener's diagnosis and prognosis were, at the time he left Becton, uncertain.

Zwiener's shoulder injury continued to bother him, and he obtained a second opinion. The injury was eventually determined to consist of a tear to the right rotator cuff and nearby tendons. After further diagnostic tests, surgery was recommended. The recovery period from the surgery would require that Zwiener not use his right arm. Sapp Brothers was unable to accommodate that restriction.

Concerned that he would be without a wage during the recovery period, Zwiener tried to postpone the surgery until August 2010. Despite a medical opinion that waiting a few months would not adversely affect the outcome of the surgery, Becton insisted that Zwiener have the surgery right away if he wanted to ensure it was compensable. The surgery took place on May 10, 2010.

On May 12, 2010, Zwiener was released to work with the restriction of not using his right arm. Because Sapp Brothers could not accommodate this restriction, Zwiener did not work during the period of the restriction. Zwiener was not released to return to work at Sapp Brothers until July 8.

Becton agreed to pay for the surgery and related medical expenses, but it denied payment of any temporary total disability benefits during the recovery period for the surgery. Becton reasoned that if Zwiener had stayed employed there, Becton would have accommodated Zwiener's recovery restrictions and he would have been able to continue to receive a wage during that period. Becton has an aggressive return-to-work policy

designed to put its injured employees back to work rather than have them remain off work collecting workers' compensation benefits.

Unfortunately, Zwiener's symptoms were not completely alleviated by the first surgery. Eventually, a second surgery was recommended and scheduled for January 9, 2012. Zwiener testified that Becton had denied compensation for the recommended magnetic resonance imaging to determine whether the first surgery had been successful and whether another surgery was necessary. Zwiener understood that Becton would not approve the second surgery, so he submitted the second surgery for payment through his personal health care insurer instead.

Anticipating Becton's denial of temporary total disability benefits, on December 22, 2011, Zwiener's counsel wrote to Becton's counsel stating that Zwiener would be able to work for Becton, with restrictions, during the recovery period of his surgery. Zwiener's counsel asked that Becton inform Zwiener whether it would allow this and how to proceed. Becton did not respond. At the workers' compensation hearing, Becton objected to the letter as hearsay. The objection was overruled.

The second surgery was performed on January 9, 2012. Zwiener's physician recommended no work until January 30. Zwiener was released to work with restrictions on January 31. But Sapp Brothers was again unable to accommodate the restrictions, which included Zwiener's not being able to use his right arm.

Zwiener's counsel again wrote to Becton's counsel, asking that Becton state whether it would allow Zwiener to work light duty at Becton during the postsurgery recovery period. Becton did not respond. At the hearing, Becton's hearsay objection to this letter was overruled.

Becton denied temporary total disability benefits for the recovery period of the second surgery. Zwiener was not able to return to work at Sapp Brothers until April 25, 2012.

At the hearing before the compensation court, the parties agreed that Becton had voluntarily paid Zwiener $8,275.37, pursuant to a permanent partial impairment rating after the first

surgery. The parties agreed that this amount should be credited against any award and that, accordingly, no waiting-time penalties should be incurred.

The compensation court awarded Zwiener temporary total disability benefits for the periods he was unable to work due to his postsurgery restrictions. The court found no merit to Becton's position that if an employee is no longer working at Becton and cannot take advantage of Becton's return-to-work policy, then that employee is not entitled to temporary total disability benefits. The court explained that an employee is not "eternally bound" to remain employed with the employer responsible for the injury in order to receive the workers' compensation benefits to which the employee is entitled by statute. Furthermore, the court explained that "[i]t is not logical to mandate an internal return-to-work policy upon someone who is no longer an employee of the entity issuing the policy."

The court found that Becton had failed to pay outstanding medical expenses of a community hospital in the amount of $2,173 and of an orthopaedic hospital in the amount of $1,222.18. In addition, Becton was ordered to reimburse Zwiener's insurer for $5,565.86 in payments it made for medical expenses related to the second surgery. The court determined that Becton owed Zwiener $26.34 in mileage.

The court awarded attorney fees to Zwiener in the amount of $5,155. This was the total amount of attorney fees Zwiener's attorney demonstrated were incurred in bringing Zwiener's workers' compensation claim against Becton. The court noted that there was no reasonable controversy as to the compensability of the temporary total disability benefits and, also, that certain medical bills and mileage expenses were paid late. The court did not calculate the attorney fee award specifically in relation to the amount of untimely paid medical bills, because it also considered attorney fees due for the denial of temporary total disability benefits. The court awarded 50 percent waiting-time penalties on all amounts of temporary total disability due and owing. No credit was given for the $8,275.37 Becton already paid. Becton appeals and Zwiener cross-appeals from the award.

## ASSIGNMENTS OF ERROR

Becton assigns that the compensation court erred in (1) finding that Zwiener was entitled to temporary total disability benefits, (2) finding that Zwiener is entitled to waiting-time penalty benefits and for failing to give Becton credit for benefits paid to date, (3) awarding attorney fees of $5,155, and (4) allowing the hearsay evidence contained in the letters written by Zwiener's attorney, an exhibit pertaining to late medical bills, and the exhibit outlining attorney fees incurred in bringing Zwiener's claim.

On cross-appeal, Zwiener asserts that the court erred in failing to find that medical bills paid to OrthoWest in the total amount of $9,308 were also untimely paid.

## STANDARD OF REVIEW

[1,2] Whether a plaintiff in a Nebraska workers' compensation case is totally disabled is a question of fact.[1] In testing the sufficiency of the evidence to support the findings of fact in a workers' compensation case, every controverted fact must be resolved in favor of the successful party and the successful party will have the benefit of every inference that is reasonably deducible from the evidence.[2]

## ANALYSIS

### ENTITLEMENT TO TEMPORARY TOTAL DISABILITY

[3,4] Temporary disability is the period during which the employee is submitting to treatment, is convalescing, is suffering from the injury, and is unable to work because of the accident.[3] Total disability exists when an injured employee is unable to earn wages in either the same or a similar kind of work he or she was trained or accustomed to perform or in any other kind of work which a person of the employee's mentality and attainments could perform.[4]

---

[1] *Manchester v. Drivers Mgmt.*, 278 Neb. 776, 775 N.W.2d 179 (2009).

[2] See *id*.

[3] *Frauendorfer v. Lindsay Mfg. Co.*, 263 Neb. 237, 639 N.W.2d 125 (2002).

[4] *Id*.

[5-7] We have explained that the level of a worker's disability depends on the extent of diminished employability or impairment of earning capacity, and does not directly correlate to current wages.[5] A return to work at wages equal to those received before the injury may be considered, but it does not preclude a finding that the employee is either partially or totally disabled.[6] Earning capacity determinations should not be distorted by factors such as "'business booms, sympathy of a particular employer or friends, temporary good luck, or the superhuman efforts of the claimant to rise above his crippling handicaps.'"[7]

[8] But, if payment of wages upon a return to work was intended to be in lieu of indemnity benefits for which the employer accepted responsibility, then credit for those wages is allowed.[8] Becton did not pay wages to Zwiener during the periods he was convalescing from the two surgeries necessitated by his injury because, had Zwiener not left his employment there, Becton would have paid wages for light-duty work in lieu of temporary total disability benefits. Becton believes an employee waives temporary total disability benefits when the employee moves on from a job that could have accommodated medical restrictions. We disagree.

We have never held that an employee who ceases to work for the employer responsible for the injury somehow forfeits temporary disability benefits because the employer would have accommodated light-duty work in lieu of benefits. In fact, in *Guico v. Excel Corp.*[9] and *Manchester v. Drivers Mgmt.*,[10] we

---

[5] See *Heiliger v. Walters & Heiliger Electric, Inc.*, 236 Neb. 459, 461 N.W.2d 565 (1990).

[6] See *id*.

[7] *Id*. at 471, 461 N.W.2d at 574 (quoting 2 A. Larson, The Law of Workmen's Compensation § 57.51(a) (1989)).

[8] See, *Anderson v. Cowger*, 158 Neb. 772, 65 N.W.2d 51 (1954); *Godsey v. Casey's General Stores*, 15 Neb. App. 854, 738 N.W.2d 863 (2007). See, also, 4 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 82.01 (2011).

[9] *Guico v. Excel Corp.*, 260 Neb. 712, 619 N.W.2d 470 (2000).

[10] *Manchester v. Drivers Mgmt., supra* note 1.

held that employees who were fired for cause did not forfeit their temporary total disability benefits simply because their employers would have provided light-duty work.

In *Guico*, the employee lost his light-duty work because he was fired for safety violations associated with the injury. The employee in *Manchester* similarly was fired and lost her light-duty work because of negligence in the accident leading to her injury. Becton apparently relies on our observation in *Guico* that some jurisdictions hold that employees lose their temporary disability benefits if their employer provided them with light-duty work and if they were fired and lost that accommodation because of misconduct unrelated to the injury.[11] But we did not opine on whether we would adopt such a rule if such facts were presented, and such facts are not presented here.

In *Guico*, we noted that, generally, when determining the extent of disability, "'the fact of termination or the reason for it is irrelevant.'"[12] Our court has consistently given the Nebraska Workers' Compensation Act[13] a liberal construction to carry out justly its beneficent purpose to provide an injured worker with prompt relief from the adverse economic effects caused by a work-related injury or occupational disease.[14] Furthermore, we recognize that employer-employee relationships are generally at-will and that the employee is free to leave an employment relationship without recourse by the employer—just as the employer is free to terminate the relationship, so long as it does not act unlawfully or in breach of contract.[15]

Adopting Becton's waiver argument would not only undermine the beneficent purposes of the Nebraska Workers' Compensation Act, it would effectively bind workers to

---

[11] See *Guico v. Excel Corp., supra* note 9.

[12] *Id*. at 723, 619 N.W.2d at 479 (quoting *Aldrich v. ASARCO, Inc*., 221 Neb. 126, 375 N.W.2d 150 (1985)).

[13] Neb. Rev. Stat. §§ 48-101 to 48-1,117 (Reissue 2010).

[14] See, *Bacon v. DBI/SALA*, 284 Neb. 579, 822 N.W.2d 14 (2012); *Visoso v. Cargill Meat Solutions*, 18 Neb. App. 202, 778 N.W.2d 504 (2009).

[15] See *Trosper v. Bag 'N Save*, 273 Neb. 855, 734 N.W.2d 704 (2007).

employers responsible for the injury until full recovery, thereby limiting at-will employees' mobility and freedom to choose other work opportunities. Nothing in the language of the act or public policy supports the waiver rule proposed by Becton.

The compensation court was not clearly wrong in determining that Zwiener had a total loss of earning capacity during the time he was convalescing from the surgeries necessitated by his work-related injury. We affirm the compensation court's award of temporary total disability benefits in the amount of $11,308.05.

### CREDIT, ATTORNEY FEES, AND WAITING-TIME PENALTIES

But the court failed to give Becton credit against this award for $8,275.37 already paid to Zwiener. The parties had stipulated this amount should be credited against the award, and they agree on appeal that the compensation court erred in failing to give such credit. The parties agree that because the compensation court failed to give Becton credit for $8,275.37 paid, it erred in awarding waiting-time penalties. Zwiener never sought waiting-time penalties. We reverse with directions for the compensation court to give Becton credit for the $8,275.37 paid and to vacate the waiting-time penalties.

The parties further agree that because of the failure to give Becton credit for the $8,275.37 payment, the compensation court improperly calculated the attorney fee award. At oral argument, Zwiener's counsel explained that due to the $8,275.37 payment, he had not sought attorney fees as a penalty for Becton's failure to pay temporary total disability benefits. Zwiener's counsel conceded at oral argument that the only basis for an attorney fee award here is the late payment of medical bills and that the case must be remanded for a determination as to what portion of the attorney fees is properly attributable to the pursuit of the late medical bills. Because Zwiener has waived any claim to an attorney fee award unrelated to the late medical bills, we reverse, and remand the cause for a redetermination of the attorney fee award based only on the untimely payment of medical bills.

The parties agree that the compensation court should redetermine attorney fees based on the standards set forth in *Harmon v. Irby Constr. Co*.[16] In *Harmon*, an employer had conceded all points of compensability of the employee's injury except for a $30 per diem payment that the employee wished to add to his weekly wage calculation. The employee also alleged that the employer had failed to pay one $165 medical bill within 30 days after notice of the obligation for payment. We rejected the employee's argument concerning the $30 per diem payment, but found the medical bill issue meritorious. We noted, however, that this was the only delinquent bill and that the employer had made timely medical payments in excess of $50,000. Of the 36.2 hours of work documented by the employee's attorney, only a fraction could be directly attributed to collection of that one delinquent bill. Under such circumstances, we held that a court calculating attorney fees pursuant to § 48-125 must pay particular attention to the amount of the legal work performed in relation to the amount of the unpaid medical bill and the amount of the unpaid medical bill in relation to the workers' compensation award received.[17] "Allowing a claimant to recover all of his or her attorney fees based on the failure of a defendant to pay such a bill would provide the claimant with a windfall."[18]

The only dispute between Zwiener and Becton concerning attorney fees is the amount of unpaid medical bills that the court should consider in making its redetermination. Zwiener argues on cross-appeal that the compensation court erred in failing to find an additional $9,308 in late medical bills to Orthowest. Becton did not file a reply brief to Zwiener's cross-appeal, but apparently believes that the attorney fees should be calculated only on the compensation court's finding of $1,890.13 in untimely medical bills and expenses.

---

[16] *Harmon v. Irby Constr. Co*., 258 Neb. 420, 604 N.W.2d 813 (1999).

[17] *Id*.

[18] *Id*. at 430, 604 N.W.2d at 821.

Although Zwiener presented evidence that $9,308 in OrthoWest medical bills were paid 79 days after treatment, the compensation court did not make any finding as to whether the OrthoWest bills were untimely paid after notice, thus falling under the mandatory attorney fee provision found in § 48-125. We direct the court to make such a determination on remand, before recalculating the attorney fee award.

## Evidentiary Objections

We find no merit to Becton's remaining assignment of error relating to evidentiary objections. Becton objected to exhibit 1 as hearsay, exhibit 3 on foundation and hearsay, and exhibit 5 on relevance, foundation, and hearsay grounds.

Exhibit 1 was a letter from Zwiener's attorney stating that Zwiener was willing to work light duty while convalescing. Becton's objection to that exhibit is moot. The letter is irrelevant to our holding that Zwiener did not waive temporary total disability by leaving his employment with Becton, and it was not the basis for the compensation court's award of temporary total disability benefits.

Exhibit 3 set forth the fees Zwiener's attorney incurred in bringing the suit. Becton does not explain how the attorney's own affidavit as to his fees lacked foundation. And although exhibit 3 may include "all aspects of preparing the case,"[19] it is not thereby inadmissible. The compensation court on remand will consider the exhibit in light of *Harmon*,[20] as set forth above.

Finally, the court did not abuse its discretion in allowing approximately 200 pages of "repetitive"[21] documents pertaining to medical bills in exhibit 5. Becton's principal objection was that the demand letters in exhibit 5 contained hearsay. It can be presumed[22] that the compensation court considered the

---

[19] Brief for appellant at 22.

[20] *Harmon v. Irby Constr. Co., supra* note 16.

[21] Brief for appellant at 22.

[22] See, e.g., *State v. Orduna*, 250 Neb. 602, 550 N.W.2d 356 (1996).

letters as evidence of notice, rather than for the truth of the matters asserted.[23]

[9,10] As a general rule, the compensation court is not bound by the usual common-law or statutory rules of evidence.[24] Subject to the limits of constitutional due process, the admission of evidence is within the discretion of the compensation court, whose determination in this regard will not be reversed upon appeal absent an abuse of discretion.[25] We find no reversible error in the admission of the exhibits complained of by Becton in this appeal.

## CONCLUSION

We affirm the award of temporary total disability benefits. We reverse the failure to credit disability payments made by Becton, the award of waiting-time penalties, and the amount of the attorney fee award. Pursuant to the agreement of the parties, we remand the cause for a redetermination of the attorney fees that should be awarded in connection with untimely paid medical bills only. On remand, we also direct the court to determine whether the OrthoWest bills fall under § 48-125.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.

MILLER-LERMAN, J., participating on briefs.

---

[23] See, *Werner v. County of Platte*, 284 Neb. 899, 824 N.W.2d 38 (2012); *State v. McCave*, 282 Neb. 500, 805 N.W.2d 290 (2011); *Alliance Nat. Bank v. State Surety Co.*, 223 Neb. 403, 390 N.W.2d 487 (1986).

[24] See *Tapia-Reyes v. Excel Corp.*, 281 Neb. 15, 793 N.W.2d 319 (2011).

[25] *Veatch v. American Tool*, 267 Neb. 711, 676 N.W.2d 730 (2004).