IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

VANDERWERF V. RAY MARTIN CO.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

MATTHEW VANDERWERF, APPELLANT,
V.
RAY MARTIN COMPANY OF OMAHA, APPELLEE.

Filed March 4, 2014.    No. A-13-520.

Appeal from the Workers' Compensation Court: THOMAS E. STINE, Judge. Affirmed.

Michael P. Dowd, of Dowd, Howard & Corrigan, L.L.C., for appellant.

Andrew R. Portis, of Law Offices of James W. Nubel, for appellee.

IRWIN, MOORE, and BISHOP, Judges.

BISHOP, Judge.

Matthew Vanderwerf was working as a plumber on February 28, 2012, on a project for Ray Martin Company of Omaha (Ray Martin) when he twisted and injured his right knee while working on a scissor lift. The parties stipulated that Vanderwerf was an employee of Ray Martin and sustained a compensable work-related injury to his right lower extremity. However, the parties disputed the nature and extent of Vanderwerf's injury, whether he was entitled to future medical care (including a third surgical procedure), and his entitlement to temporary and permanent disability benefits. One week before trial, Ray Martin laid off Vanderwerf. Vanderwerf sought temporary partial disability (TPD) benefits to cover the difference in his pay following his second surgery, arguing that he was paid a journeyman's wages while actually performing a foreman's duties. Vanderwerf also sought temporary total disability (TTD) benefits from the date of his layoff and into the future.

The Workers' Compensation Court entered an award incorporating the stipulation of the parties and finding that Vanderwerf had not reached maximum medical improvement and was entitled to future medical care reasonably necessary as a result of the February 28, 2012, accident and injury, including a third surgery. The compensation court denied Vanderwerf an award of

- 1 -

TPD, TTD, or permanent partial disability benefits. Vanderwerf appeals the compensation court's denial of TPD and TTD benefits. For the following reasons, we affirm.

BACKGROUND

Vanderwerf, age 38 at the time of trial, has been a member of Plumbers Local 16 since 1995, when he began a plumber's apprenticeship program. After completing the plumber's apprenticeship program in 2000, Vanderwerf worked for various contractors as both a "journeyman" and a "foreman." When Vanderwerf began working for Ray Martin in 2008, he was designated as a journeyman and his wage rate was set by a collective bargaining agreement. Vanderwerf testified that his job as a plumber required him to stand and walk throughout the course of the day, climb ladders, and engage in extensive bending, kneeling, and squatting.

After working for Ray Martin for a few years, on January 28, 2012, Vanderwerf requested foreman's wages (a higher wage than a journeyman) for his work on the project to which he was assigned. As a foreman, Vanderwerf's duties included, "[O]rdering, laying out the project, taking care of the men, doing their hours each week, what hours they worked, in that nature." Vanderwerf was working as a foreman receiving foreman's wages when he injured his knee on February 28.

Following his February 28, 2012, accident and injury, an MRI taken on March 19 revealed a medial meniscus tear and mild degenerative joint disease in Vanderwerf's right knee. On April 6, Dr. David Brown performed an arthroscopy and partial meniscectomy surgery on the knee. Vanderwerf testified that following his April 6 surgery, he did not return to light-duty work, but, rather, was "[b]asically full duty." Vanderwerf continued to receive foreman's wages after returning to work following his April surgery.

On a followup visit to Dr. Brown on April 17, 2012, Vanderwerf reported he still had some pain, swelling, and difficulty with range of motion in his knee. On July 25, Vanderwerf sought treatment from Dr. Samar Ray (another doctor at the clinic where Dr. Brown worked), who noted that Vanderwerf was experiencing "quite a bit of discomfort on the inner side of the right knee." On July 30, Vanderwerf saw Dr. Brown for his persistent pain and tenderness in the right knee. Dr. Brown ordered an MRI, which revealed postsurgical changes of his prior partial medial meniscectomy and two new tears to his medial meniscus necessitating another surgical procedure. On August 16, Vanderwerf underwent an arthroscopic partial medial meniscectomy surgery and remained off work until Dr. Brown released Vanderwerf to "Light Medium Work" on September 19.

Vanderwerf returned to work on September 22, 2012, and began working on an "Adult & Pediatric Urology" (APU) commercial project for Ray Martin. Vanderwerf's wage history reflects Ray Martin began paying him journeyman's wages at this time, although Vanderwerf testified that he performed what he would consider foreman's duties. He testified that he worked on the measurements and layout of the project and that he "laid out the other half of the groundwork, all the above groundwork, ordered all the material -- or took off all the material off the prints, did all the layout of where all the fixtures go on the project." Vanderwerf worked on the APU project until January 2013, when he began working on the "UNO" project.

Vanderwerf returned to Dr. Brown on October 2, 9, and 16, 2012, to undergo three injections to his right knee for his pain. Dr. Brown stated that if the injections did not help

Vanderwerf, the next step would be a proximal tibial osteotomy in the knee. On November 13, Vanderwerf returned to Dr. Brown for a followup. Dr. Brown recounted the previous injections and treatments, and he noted, "Unfortunately, the issue is that none of this has really provided long lasting relief. He can only do light duty at work." He recommended the osteotomy surgery.

In a letter dated November 26, 2012, Dr. Brown opined that Vanderwerf suffered from progressively worsening degenerative arthritis in the medial compartment of his right knee as a result of his significant meniscus loss. Dr. Brown concluded that Vanderwerf's degenerative arthritis and need for the proximal tibial osteotomy was directly related to his February 28 work-related knee injury.

Subsequent to Vanderwerf's filing of his petition for benefits in December 2012, on January 21, 2013, he was kneeling at work on the "UNO" project when his right knee locked up, and he became unable to stand or extend his leg. Vanderwerf immediately sought emergency treatment at a hospital and was placed in a knee immobilizer. At the time of this incident, Vanderwerf was performing what he considered foreman duties, including "[taking] off all of the material for the project . . . laying out where all the fixtures--the plumbing fixtures went on the project, stuff of that nature." Following this incident, Vanderwerf sought treatment from Dr. James Kalar on January 25. Dr. Kalar noted that Vanderwerf "may not return to work at this time" and that he "has been on restricted duty since last year."

On February 4, 2013, Vanderwerf saw Dr. Brown following the January 21 knee-locking incident. Dr. Brown noted his plan was still to perform the osteotomy, but that "[Vanderwerf] may return to some modified work activities; max 50 pound weightlifting and minimal squatting and bending."

On February 6, 2013, Dr. Peter Cimino saw Vanderwerf for an independent medical evaluation. Dr. Cimino opined, "The injury to the medial meniscus, which is considered the work comp injury dating back to [February 28, 2012], has been addressed with the two arthroscopic procedures. He has maximally recovered from that specific injury." Dr. Cimino agrees with Dr. Brown's opinion that the next procedure is an osteotomy, but concluded Vanderwerf's arthritic problem is a preexisting condition unrelated to the February 28 work accident. In Dr. Cimino's opinion, Vanderwerf has reached maximum medical recovery, and Dr. Cimino noted that "[h]e will continue to have to be careful with squatting, kneeling, and stair activity for 50% of the work day." Dr. Cimino opined Vanderwerf had a 7-percent impairment rating to his right knee. Dr. Cimino also concluded that Vanderwerf's January 21, 2013, knee-locking incident was a "continuation of the existing problem."

Trial was held on April 12, 2013. Slightly over a week before trial, on April 3, Ray Martin laid off Vanderwerf. At trial, Kenneth Jambor, president of Ray Martin, testified that this was the result of a reduction in force because they were "running out of work" and that it was a "typical cycle in the construction business." Jambor testified he also laid off three or four other people, although he retained employees with less experience than Vanderwerf because they had "[b]etter production." Vanderwerf had not secured other employment at the time of trial. Vanderwerf testified that although the union is supposed to "send [him] somewhere else," "nowhere will hire [him] on light duty." Vanderwerf testified that his understanding was, given his light-duty status, he will not be returned back to employment or considered as a viable

candidate for employment. At the time of trial, Vanderwerf had not been denied other employment due to his light-duty status.

The compensation court entered an award on May 15, 2013. The court, based on the opinions of Dr. Brown, found that the nature and extent of Vanderwerf's right knee work injury was a torn medial meniscus and aggravation of Vanderwerf's preexisting degenerative arthritis, and "specifically reject[ed] Cimino's opinions on the causation of [Vanderwerf's] injuries." Based upon Dr. Brown's opinions, the court found that Vanderwerf had not reached maximum medical improvement and was entitled to additional workers' compensation benefits, including the osteotomy surgery.

The court found that Vanderwerf did not sustain a temporary loss of earning capacity following his second surgery entitling him to TPD benefits between September 22, 2012, and January 12, 2013. Vanderwerf had claimed a total of $2,771.83 in TPD benefits between September 22, 2012, and January 12, 2013, due to Ray Martin's paying Vanderwerf journeyman's wages rather than a foreman's wages during this time period. Vanderwerf sought the difference between the journeyman wage he actually received and the higher foreman wage. The court declined to make such an award on the basis that Vanderwerf's testimony that he returned to work performing the same duties he performed prior to his work injury "defeats his legal argument." The court found that Vanderwerf's claim he was fully capable of performing as foreman and actually did perform as a foreman, but was only paid journeyman wages, was "largely irrelevant on the issue of [Vanderwerf's] entitlement to [TPD] benefits."

The court also found that Vanderwerf was not entitled to TTD benefits from the date his employment with Ray Martin ended on April 3, 2013, and into the future, because the evidence at trial did not reflect that he was currently unable to work because of his injury. The court also stated, "At trial, [Vanderwerf] attempted to show that [Ray Martin] terminated [Vanderwerf] in retaliation for [Vanderwerf's] asserting his workers' compensation rights. Even if true, that issue is beyond the scope of this Court's jurisdiction." The court also concluded that Vanderwerf was not entitled to permanent partial disability benefits because he had not yet reached maximum medical improvement.

Vanderwerf timely appealed from the award.

ASSIGNMENTS OF ERROR

Vanderwerf assigns four errors on appeal, which we consolidate to two: The trial court erred by failing (1) to award him TPD benefits and (2) to award him TTD benefits.

STANDARD OF REVIEW

A judgment, order, or award of the Workers' Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Rader v. Speer Auto*, 287 Neb. 116, 841 N.W.2d 383 (2013). In determining whether to affirm, modify, reverse, or set aside a judgment of the Workers' Compensation Court, a higher appellate court reviews the trial judge's findings of fact, which will not be disturbed unless clearly wrong.

*Id.* Regarding questions of law, an appellate court in workers' compensation cases is obligated to make its own decisions. *Id.*

ANALYSIS

Both of Vanderwerf's assignments of error regard the compensation court's failure to award him temporary disability benefits. Temporary disability is the period during which the employee is submitting to treatment, is convalescing, is suffering from the injury, and is unable to work because of the accident. *Zwiener v. Becton Dickinson-East*, 285 Neb. 735, 829 N.W.2d 113 (2013). In characterizing disability benefits, "temporary" and "permanent" refer to the duration of disability, while "total" and "partial" refer to the degree or extent of the diminished employability or loss of earning capacity. *Moyera v. Quality Pork Internat.*, 284 Neb. 963, 825 N.W.2d 409 (2013). Whether a claimant has sustained disability which is total or partial and which is temporary or permanent is a question of fact. *Schmid v. Nebraska Intergov. Risk Mgt. Assn.*, 239 Neb. 412, 476 N.W.2d 243 (1991). A compensation court's findings of fact have the effect of a jury verdict and will not be disturbed on appeal unless clearly wrong. *Clark v. Alegent Health Neb.*, 285 Neb. 60, 825 N.W.2d 195 (2013). In testing the sufficiency of the evidence to support the findings of fact by the Workers' Compensation Court, the evidence must be considered in the light most favorable to the successful party, every controverted fact must be resolved in favor of the successful party, and the successful party will have the benefit of every inference that is reasonably deducible from the evidence. *Pearson v. Archer-Daniels-Midland Milling Co.*, 285 Neb. 568, 828 N.W.2d 154 (2013). With these standards in mind, we address Vanderwerf's assigned errors below.

*Entitlement to TPD Benefits.*

Vanderwerf stipulated that he sought TPD benefits from September 22, 2012, through January 19, 2013, the time period during which he worked on the APU project following his second knee surgery. Vanderwerf did not seek TPD benefits for the time period subsequent to the APU project when he was working as a journeyman on the "UNO" project from January through April. At trial, counsel for Vanderwerf clarified to the court that he was requesting TPD benefits for his work on the APU project "based solely on the fact that [Vanderwerf] alleges he should have been paid . . . foreman wages as opposed to journeyman wages." On appeal, Vanderwerf argues the compensation court failed to properly consider his diminishment in earning capacity during this timeframe.

The trial court denied Vanderwerf an award of TPD benefits between September 22, 2012, and January 19, 2013, finding that

> [Vanderwerf] was able to procure employment generally; that he had the ability to hold a job obtained; that he had the capacity to perform the tasks of the work, even with the limitations imposed by Brown; and, that he had the ability to earn wages in the employment for which he is fitted -- both as a foreman plumber and as a journeyman plumber.

Vanderwerf argued that the trial court failed to consider that he was earning a lower wage following his second surgery; however, he did not argue that his lower wage was attributable to his work restrictions resulting from his work accident and injury. Rather, Vanderwerf claimed

- 5 -

that he received a lower wage due to Ray Martin's improperly classifying him as a journeyman instead of a foreman following his second surgery, despite performing the duties of a foreman. The court found that Vanderwerf's claim he was fully capable of performing as foreman and actually did perform as a foreman, but was only paid journeyman wages, was "largely irrelevant on the issue of [Vanderwerf's] entitlement to [TPD] benefits." The trial court recognized that Vanderwerf's complaint was that "he was not paid pursuant to 'union scale.'" The trial court concluded, "This is not a claim for workers' compensation benefits; it is a contract claim for wages. . . . The Workers' Compensation Court does not have jurisdiction to award workers' compensation benefits for an alleged violation of an employment contract."

As the trial court correctly noted, the relevant inquiry in the instant case is whether Vanderwerf's work restrictions precluded him from performing the duties he could do before the work injury. "'[P]artial disability'" is defined as "'[a] worker's inability to perform all the duties that he or she could do before an accident, even though the worker can still engage in some gainful activity on the job.'" *Kam v. IBP, inc.*, 12 Neb. App. 855, 867, 686 N.W.2d 631, 641 (2004), *affirmed* 269 Neb. 622, 694 N.W.2d 658 (2005) (quoting Black's Law Dictionary 474 (7th ed. 1999)). Contrary to Vanderwerf's assertions, the record supports the trial court's finding that "[Vanderwerf] had the ability to perform all duties that he could do before the work injury," despite some general work restrictions that Dr. Brown recommended for Vanderwerf in September 2012. There is no evidence in the record to show that such restrictions prevented Vanderwerf from performing the same duties that he performed before. Given Vanderwerf's own testimony, it is apparent that the trial court simply was not persuaded that Vanderwerf's restrictions were the cause of Vanderwerf's receiving journeyman's wages instead of foreman's wages, as Vanderwerf was not precluded from working and performing the same duties he could perform prior to his work accident and injury. A determination as to whether an injured worker has had a loss of earning power is a question of fact to be determined by the compensation court. *Davis v. Goodyear Tire & Rubber Co.*, 269 Neb. 683, 696 N.W.2d 142 (2005). A compensation court's findings of fact have the effect of a jury verdict and will not be disturbed on appeal unless clearly wrong. *Clark v. Alegent Health Neb.*, 285 Neb. 60, 825 N.W.2d 195 (2013). Upon our review of the record, we cannot say the compensation court was clearly wrong in determining that Vanderwerf did not sustain a temporary loss of earning capacity entitling him to TPD benefits.

*Entitlement to TTD Benefits.*

Vanderwerf claimed TTD benefits subsequent to April 3, 2013, the date his employment with Ray Martin ended. The trial court found that Vanderwerf was not entitled to TTD benefits because it found that "[Vanderwerf] is currently not unable to work because of the work injury."

Total disability exists when an injured employee is unable to earn wages in either the same or a similar kind of work he or she was trained or accustomed to perform or in any other kind of work which a person of the employee's mentality and attainments could perform. *Zwiener v. Becton Dickinson-East*, 285 Neb. 735, 829 N.W.2d 113 (2013). There is no indication in the record that Vanderwerf was unable to earn wages or perform the work of either a journeyman or a foreman plumber. As discussed above, Vanderwerf's own testimony was that he can and did perform the duties of a foreman plumber after his second surgery while working on

the APU project from September 2012 through January 2013 (he just claimed he was not appropriately compensated). The record also reflects that, excluding Vanderwerf's setback in January 2013 after his knee-locking incident, he returned to work as a journeyman on the "UNO" project from sometime in January 2013 until his employment with Ray Martin ceased in April. The only physician's note regarding Vanderwerf's physical limitations during this time period was from Dr. Brown, who released Vanderwerf to "return to some modified work activities," on February 4. Dr. Brown did not opine that Vanderwerf was completely unable to return to work as a plumber. Further, Vanderwerf did not dispute his classification as a journeyman or seek TPD benefits from January 2013 through the time he was laid off from Ray Martin, and his wage history indicates he continued to work regularly during this time.

Vanderwerf urged both the compensation court and this court to consider the circumstances of his termination when making a finding that he was totally disabled. At trial, although Vanderwerf testified that given his "light duty" status, he did not think he would be a viable candidate for employment, he also testified that the union had not yet attempted to send him elsewhere and he had not been denied employment due to his "light duty" status. Jambor meanwhile testified that Vanderwerf was let go due to a reduction in force because they were "running out of work" and that it was a "typical cycle in the construction business." Jambor testified that he had to lay off three or four other people as well, none of whom were injured. The trial court considered the above conflicting evidence regarding Vanderwerf's departure from Ray Martin, and concluded:

> The evidence as a whole indicates [Vanderwerf] returned to gainful employment with [Ray Martin], and that he was thereafter terminated as part of a cyclical reduction in force. This Court has no jurisdiction to weigh the circumstances of [Vanderwerf's] termination and award workers' compensation benefits if the Court concludes there was a retaliatory adverse employment action . . . .

The court found that there was no medical evidence that Vanderwerf was taken off work or that he was unable to work from April 4, 2013, and into the future, because of his work injury. As we outlined above, Vanderwerf did return to gainful employment with Ray Martin between January and April 2013. The level of a worker's disability depends on the extent of diminished employability or impairment of earning capacity. *Zwiener v. Becton Dickinson-East*, 285 Neb. 735, 829 N.W.2d 113 (2013). The compensation court appropriately focused on Vanderwerf's ability to earn wages, rather than on the fact that he was no longer employed by Ray Martin. Given the above evidence in the record, we conclude the compensation court was not clearly wrong in concluding that Vanderwerf was not unable to work due to his injury and in denying him TTD benefits subsequent to his departure from Ray Martin.

## CONCLUSION

The compensation court's denial of Vanderwerf's claims for TPD and TTD benefits is supported by the evidence and complies with the law. Therefore, we affirm.

AFFIRMED.