IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

PERSSON V. D & S TIRES

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

KYLE PERSSON, APPELLEE,

V.

D & S TIRES, INC., APPELLANT.

Filed December 27, 2022.    No. A-22-338.

Appeal from the Workers' Compensation Court: JAMES R. COE, Judge. Affirmed.

Daniel P. Lenaghan, of Mooney, Lenaghan, Westberg Dorn, L.L.C., for appellant.

Jon Rehm, of Rehm, Bennett, Moore & Rehm, P.C., L.L.O., for appellee.

PIRTLE, Chief Judge, and ARTERBURN and WELCH, Judges.

PIRTLE, Chief Judge.

### INTRODUCTION

Employer, D & S Tires, Inc. (D & S Tires), appeals from an award of the Nebraska Workers' Compensation Court in favor of Kyle Persson. For the reasons that follow, we affirm.

### BACKGROUND

Persson was employed by D & S Tires for roughly 24 years as a welder and fabricator. In September 2015, Persson was examined for complaints of bilateral carpal tunnel syndrome that had gotten progressively worse over the course of 4 to 5 years. Persson reported "symptoms of numbness and tingling with night pain that awakens him about every hour." Persson underwent an "EMG nerve conduction study" which showed "moderate to severe carpal tunnel syndrome, right [hand] worse than left." It was determined that the carpal tunnel syndrome was a result of his repetitive work at D & S Tires. Persson obtained a surgical release of the carpal tunnel in his right hand on September 29, 2015.

- 1 -

Persson's first followup appointment was roughly 2 weeks post-operation, and he reported "complete resolution of the numbness and tingling in his fingers." Persson reported some pain and swelling near the incision site, which the attending physician attributed to a complication that occurred during surgery. The attending physician observed that the surgery achieved "good resolution of neuropathy" but that Persson had not reached maximum medical improvement (MMI) on account of ongoing pain and swelling near the incision site. Persson reached MMI with respect to the right hand on April 1, 2016, at which point Persson's right carpal tunnel injury was considered healed with good results. The physician noted "some persistent thenar muscle pain and weakness related to prolonged carpal tunnel syndrome before [surgery]," and Persson received a permanent partial impairment rating of 4 percent for the right hand.

Persson returned to work at D & S Tires and continued his employment there until February 2018. On February 1, Persson was once again examined for complaints of bilateral carpal tunnel syndrome as a result of his employment. Persson reported a return of "numbness and tingling" in his right hand that began in June or July 2017 and ongoing carpal tunnel symptoms in his left hand. In addition, on or about February 15, 2018, Persson suffered a work-related injury to his right shoulder. Persson resigned from D & S Tires on February 23, 2018, citing the aggravation of his carpal tunnel syndrome and the injury to his right shoulder.

D & S Tires accepted Persson's shoulder complaints as a compensable injury and initiated temporary total disability (TTD) payments on March 5, 2018. It was eventually determined that Persson had suffered a "rotator cuff" tear in his right shoulder, and he underwent corrective surgery on September 7, 2018. Persson was released from work restrictions and declared to be at MMI with respect to the shoulder injury on April 22, 2019. However, D & S Tires ceased TTD payments on November 11, 2018, after surveillance showed Persson working in an ice cream shop owned and operated by Persson and his wife. D & S Tires argued that Persson was disqualified from continued TTD benefits at all times after the purchase of that ice cream shop on May 31, 2018. Persson, on the other hand, sought the entirety of TTD payments that D & S Tires withheld from November 12, 2018, through April 22, 2019.

Persson testified that his work at the ice cream shop was limited to "helping my wife out . . . on and off" as they tried to get the business going. Persson testified that he simply "filled in" where help was needed, engaging in tasks such as cooking burgers, cleaning, and picking up groceries. Persson testified that he and his wife sold the shop for a loss about a year after its purchase. Persson then obtained employment as a welder and fabricator with a new employer, Young's Welding (Young's), on August 30, 2019, but he resigned from that employment on July 23, 2021. Persson testified that he resigned from Young's due to ongoing pain and discomfort in his hands and a general difficulty performing essential tasks of his employment as a welder and fabricator. At the time of trial, Persson testified that he was looking for work but that he had only obtained a seasonal part-time position driving a grain cart for a local farmer during harvest.

Persson filed a petition in the compensation court on March 17, 2021, seeking compensation for injuries to both hands, his right shoulder, and his neck. Trial was held on February 15, 2022. The parties stipulated that Persson's right shoulder was a compensable work-related injury incurred as a result of an accident on or about February 15, 2018. However, there was a dispute as to whether Persson was disqualified from continued TTD benefits as a result of his work in the ice cream shop. There was also a dispute as to whether Persson's carpal tunnel

injuries were an aggravation or a recurrence of the carpal tunnel injuries complained of in 2015. The court rejected Persson's claim as it relates to alleged neck injuries.

The court ultimately concluded that Persson's work in the ice cream shop did not disqualify him from receiving TTD payments during the time that he was otherwise eligible and awarded Persson TTD benefits for the entire period of time from March 5, 2018 to April 22, 2019, and D & S Tires was given credit for the TTD payments that were made from March 5 to November 11. The court further concluded that Persson's carpal tunnel injuries were an aggravation of the 2015 injuries and were thus compensable as a result of the 2018 accident. In that regard, the court noted that Persson had not experienced carpal tunnel symptoms in his right hand for over a year after the 2015 surgery and that symptoms returned as a result of the "repetitive trauma" associated with Persson's continued employment at D & S Tires.

Altogether, the court found that the undisputed shoulder injury was resolved on April 22, 2019, when Persson was declared to be at MMI and that Persson was entitled to a 10 percent permanent partial impairment to the right arm. The court further found that Persson was entitled to a 2 percent permanent partial impairment to the right hand as a result of the aggravation to Persson's carpal tunnel syndrome. The court ordered that Persson be compensated accordingly and also ordered "a workup for vocational rehabilitation." D & S Tires appealed.

## ASSIGNMENTS OF ERROR

D & S Tires assigns that the compensation court erred in (1) awarding TTD benefits from May 31, 2018, through April 22, 2019; (2) awarding vocational rehabilitation benefits; and (3) failing to comply with Rule 11 of the Nebraska Workers' Compensation Court Rules of Procedure.

## STANDARD OF REVIEW

Pursuant to Neb. Rev. Stat § 48-185 (Reissue 2021), an appellate court may modify, reverse, or set aside a compensation court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Aboytes-Mosqueda v. LFA Inc.*, 306 Neb. 277, 944 N.W.2d 765 (2020).

On appellate review, the factual findings made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Id.* In testing the sufficiency of the evidence to support the findings of fact in a workers' compensation case, an appellate court considers the evidence in the light most favorable to the successful party, every controverted fact must be resolved in favor of the successful party, and the appellate court gives the successful party the benefit of every inference reasonably deducible from the evidence. *Id.*

## ANALYSIS

*Temporary Total Disability.*

D & S Tires first assigns that the compensation court was clearly wrong to award Persson TTD benefits from March 5, 2018, to April 22, 2019. D & S Tires argues that Persson was disqualified from TTD benefits on account of his involvement with an ice cream shop that was owned and operated by Persson and his wife. D & S Tires points to surveillance footage captured

in October and November 2018, and argues that Persson demonstrated his ability to return to work subsequent to the shoulder injury. In contrast, Persson argues that he was not disqualified from TTD benefits on account of his working "a menial job" for "an especially accommodating employer" while he recovered from his shoulder injury. Brief for appellee at 11-12.

Temporary disability is the period during which the employee is submitting to treatment, is convalescing, is suffering from the injury, and is unable to work because of the accident. *Zwiener v. Becton Dickinson-East*, 285 Neb. 735, 829 N.W.2d 113 (2013). Total disability exists when an injured employee is unable to earn wages in either the same or a similar kind of work which a person of the employee's mentality and attainments could perform. *Id.* The level of a worker's disability depends on the extent of diminished employability or impairment of earning capacity. *Id.* Earning capacity determinations should not be distorted by factors such as "business booms, sympathy of a particular employer or friends, temporary good luck, or the superhuman efforts of the claimant to rise above his crippling handicaps." *Id.* at 741, 829 at 119. An employee's return to work does not in every case terminate an employee's total disability from a work-related injury and does not preclude a finding that the employee's total disability continues notwithstanding the return to work. *Heiliger v. Walters & Heiliger Electric, Inc.*, 236 Neb. 459, 461 N.W.2d 565 (1990). "The essence of the test is the probable dependability with which claimant can sell his services in a competitive labor market." *Id.* at 470-71, 461 N.W.2d at 574 (quoting 2 A. Larson, The Law of Workmen's Compensation § 57.51(a) (1989)).

D & S Tires likens the present case to an unpublished decision, *Butler v. Drivers Management, Inc.*, 2001 WL 880561 (Neb. App. Aug. 7, 2001) (not designated for permanent publication), in which this court determined that the claimant was disqualified from TTD benefits when he started a cabinetry business. In that case, the court reiterated the rules above and determined that the cabinetry business was of a nature and scale that went beyond mere "odd-lot" work and demonstrated the employee's ability to sell his services in a competitive market.

Persson argues that *Butler*, in addition to being an unpublished decision, is distinguishable from the present case. Rather, Persson likens this case to *Skomal v. World of Food*, 6 Neb. App. 128, 570 N.W.2d 542 (1997), in which this court determined that a claimant's return to work did not disqualify her from continued benefits because the employment was based in large part on the "benevolence of her present employer, [her] desire to make a financial contribution to her family and her superhuman efforts to work." *Id.* at 139, 570 N.W.2d at 549. We agree that the present case falls more in line with *Skomal* than *Butler*.

Persson's employment in the ice cream shop, to the extent he was considered an employee, did not demonstrate an ability to compete in a competitive labor market or otherwise sell his services. While surveillance video captured between October 26, 2018, and November 5, 2018, showed Persson engaged in various "work" activities at the ice cream shop, Persson's right arm was at all times immobilized in a sling, as he was still recovering from the shoulder surgery that occurred less than 2 months prior. Moreover, Persson was under an active "no work" restriction until November 14, at which point Persson was allowed to lift up to 5 pounds. Rather than having to compete for an opportunity to work at the ice cream shop, Persson simply helped out where he could on account of a particularly accommodating employer, i.e., Persson himself and his wife, and a desire to contribute to the success of the business despite his apparent disability. The compensation court explicitly noted Persson's ownership interest in the ice cream shop and

- 4 -

presumably reviewed the surveillance footage that was admitted into evidence, yet the court did not find that Persson's TTD eligibility was in any way affected. Based on our review of the record, we cannot say the compensation court was clearly wrong to find that Persson was entitled to continued TTD benefits despite his involvement with the ice cream shop.

D & S Tires argues in the alternative that the court was clearly wrong to award TTD benefits up until April 22, 2019, when medical records indicate that Persson was cleared for "full duty work without restriction" on March 25, 2019. Brief for appellant at 11. It is true that a medical record dated March 25, 2019, includes the following note by Persson's treating physician: "PLAN: Patient will be released to full duty work without restrictions. He will follow up in four weeks for recheck." It was then after that subsequent followup appointment, on April 22, that the physician specifically noted that Persson had reached MMI and was thus released from the physician's care as of that date. Under these circumstances, we cannot say the compensation court was clearly wrong to conclude that TTD benefits ended on April 22 as opposed to March 25. Accordingly, we affirm the court's award of TTD benefits from March 5, 2018 to April 22, 2019.

*Vocational Rehabilitation.*

D & S Tires next assigns that the compensation court was clearly wrong to award vocational rehabilitation benefits. At the outset, we note that the court in fact ordered "a workup to consider the appropriateness of vocational rehabilitation" based on the recommendation of Michelle Hultine, a vocational rehabilitation specialist, who conducted a loss of earning capacity evaluation prior to trial. The court ultimately discounted "the totality of the impairment rating analysis" conducted by Hultine on the grounds that it was based upon impairment ratings offered by Dr. Donato Borrillo which the court rejected. Nevertheless, the court specifically cited Hultine's recommendation that Persson may be a candidate for vocational rehabilitation as the basis for the ordered "workup."

D & S Tires first argues that Persson was not assigned any permanent work restrictions and was thus not entitled to vocational rehabilitation benefits as a matter of law. D & S Tires further argues that Persson held substantially similar employment as a welder and fabricator from August 2019 to July 2021, such that he demonstrated the ability to return to suitable work without vocational rehabilitation. Persson, on the other hand, emphasizes that he was assigned permanent impairment to his right shoulder and right hand and that he was forced to resign from Young's due to ongoing issues with his hands.

Under Neb. Rev. Stat. § 48-162.01(3) (Reissue 2021) an injured employee is entitled to vocational rehabilitation services when, as a result of the injury, he or she is unable to perform suitable work for which he or she has previous training or experience. Determination as to whether an injured employee is able to perform the work for which that employee was previously trained is a question of fact to be determined by the trial judge, and that determination will not be disturbed by an appellate court unless the judge's finding is clearly erroneous. *Green v. Drivers Mgmt, Inc.*, 263 Neb. 197, 639 N.W.2d 94 (2002). In *Green*, the Nebraska Supreme Court clarified that vocational rehabilitation services cannot be awarded absent a finding of either "permanent impairment *or* restrictions." *Id.* at 206, 639 N.W.2d at 103 (emphasis added). See, also, *Rodgers v. Nebraska State Fair*, 288 Neb. 92, 846 N.W.2d 195 (2014) (noting no authority requiring proof of both impairment and restrictions before undertaking loss of earning capacity analysis).

- 5 -

In the present case, D & S Tires is correct that Persson was not assigned any permanent work "restrictions." However, the court did find that Persson was entitled to a 10-percent permanent partial impairment to his right arm and a 2-percent permanent partial impairment to his right hand. Moreover, while Persson did return to work as a welder and fabricator for a period of time, he testified that he was forced to resign from that position on account of worsening pain and difficulty performing essential tasks of his employment.

Hultine ultimately opined that Persson's ability to engage in the sort of medium to very heavy work required by Persson's prior employment was "totally compromised." Despite her partial reliance on Borrillo, the court obviously found credible Hultine's recommendation as it related to vocational rehabilitation. Aside from Borrillo's findings, Hultine's opinion was also based on Persson's own reports of increasing pain and discomfort in his hands and difficulty performing the primary functions of his employment at Young's. Altogether, the record demonstrates that, despite temporarily returning to work as a welder and fabricator, Persson's injuries rendered him unable to continue such employment going forward. Accordingly, we cannot say the compensation court was clearly wrong to order "a workup to consider the appropriateness of vocational rehabilitation."

*Nebraska Workers' Compensation Court Rules of Procedure.*

Finally, D & S Tires assigns that the court violated Rule 11 of the Compensation Court Rules of Procedure on the grounds that the court's final award is "ambiguous and contradictory." Brief for appellant at 13. In support of this assignment of error, D & S Tires essentially points to the alleged errors already addressed above. For example, D & S Tires claims it was contradictory to simultaneously recognize Persson's involvement with the ice cream shop and yet fail to find Persson disqualified from TTD benefits as a result thereof. D & S Tires further argues that the court failed to provide a clear basis for ordering a vocational rehabilitation services workup in light of Persson's temporary return to work as a welder and fabricator.

Under Rule 11, decisions of the compensation court shall provide a basis for meaningful appellate review and specify the evidence upon which the judge relies. Rule 11 ensures that compensation court orders are sufficiently clear in addressing the parties' requested relief so that an appellant court can review the evidence relied upon by the trial judge in support of his or her findings. *Lewis v. MBC Constr. Co., Inc.*, 309 Neb. 726, 962 N.W.2d 359 (2021). It requires explicit findings of fact and conclusions of law so that all interested parties and a reviewing court can determine the legal and factual basis upon which the decision is made. *Id.* It also requires a record that elucidates the factors contributing to the lower court's decision. *Id.* Upon our review of the record and the award in this case, we conclude the compensation court's decision was sufficiently clear and did not violate Rule 11.

CONCLUSION

For the foregoing reasons, we affirm the award of the compensation court in full.

AFFIRMED.